# HALLAM R. SMITH

*v.*

# JOHN D. GILLETT.

1. PLEADING—*of an averment as to the place of delivery of property sold.* In an action by a purchaser of a lot of cattle, against the vendor, for failing to deliver them, the cattle being fed at the time of the sale, by a person named, and to be delivered at a future day, it was averred in the declaration that the cattle

were to be delivered at the place where said cattle were fed, and to be taken by the plaintiff at said place, and paid for when weighed at some convenient cattle scales. It was *held*, that the substance of the averment as to the place of delivery was, that the cattle were to be delivered where fed, and there to be received by the plaintiff; the allegation as to the weighing of the cattle and paying for them when weighed, has no connection with that of the delivery, and whether proved or not, could not affect the question of the place of delivery.

2. CONTRACT OF SALE—*of the place of delivery.* If A, owning a large lot of cattle then being fed in a certain lot of his, or of another person, agrees to sell them to B at a certain price per hundred weight, and to deliver them between two certain days named, and nothing is said about the place of delivery, a jury would have a right to infer, in an action by the purchaser against the vendor for failing to deliver, that the place of delivery was where the cattle were being fed; and evidence of such a contract would so far tend to prove an averment that the cattle were to be delivered at the place where fed, that a jury trying the cause should be permitted to consider it.

3. SAME—*of the time of payment.* Under such a contract, it would be the duty of the purchaser to be at the place where the cattle were being fed, on the day named, ready and willing to pay the price agreed on when the weight should be ascertained; nothing being said about the time of payment, the law would imply payment on delivery, and this would include the weighing, as they could not be paid for until the weight was known, and it would be a natural and reasonable inference that the most convenient cattle scales would be resorted to for that purpose.

4. SAME—*of a demand by the purchaser.* Under such a contract, the purchaser would be excused from making a demand at the time and place specified for the delivery, if the vendor had, before that time, removed the cattle and disposed of them otherwise.

5. SAME—*of a tender of the price by the purchaser.* Where two acts are to be done at the same time, like selling and delivering and receiving and paying, in an action by the purchaser for non-delivery, it is only necessary for the plaintiff to aver and prove a readiness to pay, whether the other party was at the place ready to deliver or not.

6. So, where a lot of cattle were sold, to be delivered at a certain time and place, at a certain price per hundred pounds, the time of payment not being specified, the delivery of the cattle is a condition precedent to the performance of any act by the purchaser; and the cattle being to be paid for by the hundred pounds, cannot be paid for until they are weighed and delivered.

7. Or, if the purchaser, on making demand of the property sold, is told by the vendor that he cannot have it, a tender of the price would be useless and unnecessary, and in such case a readiness to receive and pay is all the law requires of the purchaser.

8. EXCLUDING EVIDENCE FROM A JURY—*when improper.* Where evidence has been admitted which tends to prove the issue in the cause, it is error for the court to exclude it from the consideration of the jury.

9. Where all the evidence introduced by the plaintiff in an action is thus excluded by the court, such action is, in effect, an instruction to the jury as in case of a non-suit, a practice which has been long since abolished in this State, being superseded by the more proper mode of an instruction moved by the defendant to the court, to instruct the jury, if a particular fact essential to a recovery and alleged in the declaration, has not been proved, then they should find for the defendant.

10. MOTION FOR A NEW TRIAL—*whether necessary.* Where the court below improperly excludes from the consideration of a jury, evidence which has been admitted, and which tends to prove the issue in the cause, it is not necessary, in order that such action of the court may be assigned as error in the appellate court, that a motion for a new trial should have been made.

11. FORMER DECISION. In *Evans* v. *Lohr*, 2 Scam. 511, it was held, when the court has given improper instructions to the jury, or withheld such as are legal and appropriate, the proper course to adopt to enable a court to correct the error and to do justice to the parties, is for counsel to apply for a new trial. This was not the point in that case, and if it was, the reason given for the practice is not now regarded as a sound one.

·APPEAL from the Circuit Court of Sangamon county; the Hon. EDWARD Y. RICE, Judge, presiding.

This was an action of assumpsit, brought in the court below, by Smith, against Gillett, for failing to deliver a lot of cattle which the plaintiff claimed to have purchased from the defendant, at a certain price per hundred pounds.

The declaration contained six counts, but it is only necessary to consider the fourth, which alleged, substantially, that on the —— day of January, A. D. 1867, plaintiff, at the instance and request of defendant, bargained with defendant to buy of defendant, and defendant then and there sold to the plaintiff eighty head of cattle, plaintiff's choice of a lot of cattle fed by James Brocker, at the rate or price of six dollars and fifty cents per hundred weight, to be delivered by the defendant to the plaintiff at the place where said cattle were fed, and to be taken by said plaintiff, at said place, and paid for when

weighed at some convenient cattle scales, and to be delivered between the 10th and 15th days of May, 1867; alleging readiness to accept, receive and pay for the cattle, but that defendant would not deliver them, having, before the day of delivery, put it out of his power to do so.

The general issue was pleaded, and on the trial the plaintiff's testimony was as follows:

*Hallam R. Smith* testified: " I am the plaintiff in this suit, and the defendant, John D. Gillett, lives in Logan county. In January or February, 1867, I started by the cars to New York, and when we reached Elkhart, in Logan county, Ill., Gillett came upon the cars and proposed to sell me a lot of cattle which he said he would keep as long as I wished him to; he said he had a drove of cattle feeding at Brocker's, and he proposed to sell me eighty head—my choice of the Brocker cattle—at six dollars and fifty cents a hundred, to be delivered between the 10th and 15th days of May then next, and I agreed to take them of him on these terms; I asked him if he wanted any money; he said, no, he did not want any money until the delivery of the cattle; I do not know where the cattle were being fed, but supposed them to be at Brocker's; I bought eighty head of the Brocker cattle—my choice of the lot; I went on the 10th of May, 1867, to Mr. Gillett's house, in Logan county, to get the cattle, and was ready to receive and pay for them, and so informed Mr. Gillett; he said I could not get them. The general rule when contracts are made for the sale of cattle, and no place is agreed for the delivery, is that they are to be delivered at the nearest cattle scales. I think these cattle, from Mr. Gillett's description, would weigh an average from thirteen to fourteen hundred; from the 10th to the 15th of May, 1867, such cattle as these were worth from seven and three-fourths to eight cents a pound. I bought six thousand head about the time I bought these, at $6.50 per hundred."

On cross-examination, he said : " I reached Mr. Gillett's on the 10th of May, about 2 o'clock in the afternoon. I don't know where Brocker lives ; I did not go to Brocker's. I made the contract in January or February, can't tell which ; was to have eighty head of the Brocker cattle ; nothing was said at the time the contract was made as to the place of delivery ; I had, before that time, bought a lot of cattle of Mr. Gillett, and looked at them before I bought them ; Mr. Gillett had then two lots of cattle ; I looked at both and bought one lot ; I had never seen the Brocker cattle ; I never told Robert or Charlton Buckles that I had bought Gillett's contract with Brocker, and never told Charlton Buckles that by the contract with Gillett I had named the 10th of May to receive the cattle ; when I went to Mr. Gillett's on the 10th of May, I understood the cattle were gone; I went there especially to receive and pay for them; I was not, by the contract, to go and look at the cattle; I had been told by some one that if I wanted the cattle I had better go and look at them; I buy thousands of cattle without ever seeing them. It is usual in making contracts for cattle to specify where they are to be delivered; I hardly make two contracts alike, but if nothing is said in the contract, the seller is to deliver at the nearest scales; it was eighty head Gillett sold me; I was to have eighty head—my choice of the lot fed by James Brocker."

*Robert Rowen* was introduced by plaintiff, and testified as follows: "On the 14th of February, 1867, I was upon the cars from Springfield to Atlanta, and went into the ladies' car; started forward to the baggage car, and in passing, found Mr. Smith, the plaintiff, sitting by himself, and he requested me to sit by him. When we reached Elkhart, Mr. Gillet came on the car, and got to talking about selling Mr. Smith a drove of cattle, and asked Smith when he wanted them delivered to him; Smith said, 'let us agree upon the price first, and the time of delivery afterwards.' They then agreed that Gillett

would sell Smith eighty head of the Brocker cattle at $6.50 a hundred, to be delivered between the 10th and 15th of May; no place of delivery was specified. Gillett started off, and Smith called to him: ' It is a bargain, is it?' Gillett nodded his head affirmatively and said something; I don't know, but I supposed him to assent; I understood the cattle to be feeding at Brocker's. I am a railroad agent at Atlanta."

*James Brocker* was next called and sworn, and testified for plaintiff: "My name is James Brocker; I live in Logan county; I had a lot of western cattle of about a hundred, and I sold to Mr. Gillett his choice, eighty head of the lot; Mr. Gillett took them away from my place on the 7th of May; I delivered them at Broadwell, on the Chicago & Alton Railroad; they were weighed, and averaged thirteen hundred and thirty-six pounds."

The plaintiff here rested his case. And thereupon the defendant moved the court to exclude all the evidence so offered by the plaintiff from the jury, upon the ground that the said evidence did not tend to support either count of the plaintiff's declaration; which motion of the defendant was sustained by the court, and all of said evidence excluded from the jury, to which decision of the court, excluding said evidence, the plaintiff at the time excepted.

And the jury then found the issues for the defendant, and the court rendered judgment for the defendant and against the plaintiff for costs, to which the plaintiff at the time excepted.

The plaintiff appealed, and now assigns as error:

1st. That the court erred in excluding the plaintiff's evidence from the jury.

2d. The court erred in rendering judgment for the defendant and against the plaintiff for costs.

Messrs. P<small>ALMER</small> & H<small>AY</small>, for the appellant.

Messrs. STUART, EDWARDS & BROWN, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit, in the Sangamon Circuit Court, brought by Hallam R. Smith, against John D. Gillett, for failing to deliver a lot of cattle which plaintiff claimed to have purchased of the defendant at a certain price per hundred pounds.

There was no place of delivery agreed upon.

The court, on motion of the defendant, excluded the plaintiff's evidence from the jury, and a verdict was found for the defendant. The plaintiff excepted at the time to this ruling of the court, excluding his evidence, and the propriety of this, is the material question before this court.

Appellant insists, that the evidence offered, sustained the allegations in the first, second and fourth counts. These counts are substantially alike, except as to the averment of the place of delivery,—the first alleging it was to be at the nearest cattle scales; the second, "at such convenient cattle scales as the defendant should thereafter prefer and determine," and the fourth, "at the place where the said cattle were fed, and to be taken by the plaintiff at said place, and paid for when weighed at some convenient cattle scales."

The proof offered sustained neither of these counts, except it shall be considered, it supports the fourth.

What, then, is the substance and real meaning of the allegation in this fourth count as to the delivery? It is averred, the cattle were to be delivered at the place where they were fed, and to be there taken by plaintiff. This is the whole of the count on the point of delivery. The rest of the allegation has nothing to do with the delivery, but refers alone to the payment of the cattle, and their weight to be ascertained at some convenient cattle scales. This allegation, having no connection with that of the delivery, may be rejected as surplusage, for, whether proved or not, it could not affect the

question of the place of delivery. If nothing was said about the time of payment, the law would imply payment on delivery, and this would include the weighing, for they could not be paid for until the weight was known.

As we read this count, then, it alleges the cattle were to be delivered where fed, and there they were to be received by the plaintiff. What their weight might be, and when to be paid for, has nothing to do with the question of delivery.

Was it not, then, a fair question for the jury, from the evidence given, in view of the nature of the transaction and the surrounding circumstances, to consider the reasonableness of the proposition contained in the averment in this count—to say, if that was not the real intention of the parties as to the place of delivery? *Bosworth* v. *Frankberger*, 15 Ill. 508 ; 2 Greenl. Ev. secs. 609–10. What could be a more natural and reasonable inference, if A, owning a large lot of cattle then being fed in a certain lot of his, or of another person, agreeing to sell them to B, at a certain price per hundred weight, and to deliver them on one of two days named, and nothing is said about the place of delivery, than that the place where they were being fed should be the place of delivery ?

What, under such a contract, would be the duty of B ? To be at the lot on the day named, ready and willing to pay the price agreed on, when the weight is ascertained ; and would it not be an inference equally natural and reasonable, that the most convenient cattle scales would be resorted to for this purpose ?

It may be replied to this, that the proof shows the plaintiff was not at the place of feeding on the day of delivery. This is so ; but might it not be alleged in excuse, that the cattle were not there on one of the days named for delivery,—the 10th of May,—and, therefore, a demand there on that day would have been useless and unavailing.

It may be said, further, that the plaintiff should have been at the place of feeding, on the 15th of May, in order to put the defendant in default. For the same reason, this would

have been a useless act, for on the 7th, they were taken away from that place, by the defendant, to the scales at Broadwell, on the Chicago & Alton Railroad, from which fact the inference is reasonable, that they were sent off, on that day, by rail.

We cannot but think, the facts proved, which the court excluded from the jury, go far to prove that the contract, as to the place of delivery, as set out in the fourth count, was the contract and intention of the parties. They certainly furnish strong ground from which the jury might, reasonably, have inferred, that the place where the cattle were fed was the place of delivery, and, further, that the most convenient cattle scales was the place for weighing them, and paying for them.

It is, however, insisted by appellee, if the court did err in excluding this evidence, appellant cannot take advantage of it in this court, for the reason that he entered no motion for a new trial, making it here, in this court, for the first time.

In this, we think, the counsel for appellee are not exactly correct. Appellant makes no exception to the verdict. The jury could have rendered no other, the court having taken from them all the evidence. It is error of law of which appellant complains, and to which he excepted at the proper time. He says, by his exceptions, that the court put a wrong construction on the contract, its meaning and intent, by which he has been injured, by which the jury was prevented from giving their judgment on the facts proved, as evidencing the intention of the parties, and, in effect, took from the jury the right to say what was the intent of the parties as to the place of delivery. No question whatever, is made upon the propriety of the verdict, but upon the action of the court.

It has been the practice in most of the circuit courts of this State, ever since their organization, to refuse to withdraw evidence from the jury, which tended to prove the issue made, the plaintiff having a right to demand that the jury should pass upon it. By the interference of the court, on the

defendant's motion, no such opportunity has been afforded, and it is of this he complains.

But the authorities cited by appellee's counsel do not, in our judgment, sustain them in the view they have taken.

In *Hayward* v. *Ormsbee*, 11 Wis. 3, it was said, the Supreme Court will not review the evidence given in the court below, and grant a new trial because the verdict is contrary to law and evidence, unless there has been a motion to that effect in the court below and saved by a case made, or by bill of exceptions; but it will look at the instructions given to the jury. In *Jewett* v. *Whalen*, ib. 124, it was held, the Supreme Court would not examine the testimony to see whether it sustains the finding of the circuit court, unless there has been a motion for a new trial.

This court has decided the same way frequently, and such is the settled doctrine of this court. But it is not this case.

*City of Aurora* v. *West et al.* 22 Ind. 88, decides, that the Supreme Court will not reverse for the error of permitting a harmful question to be put and answered, no motion for a new trial having been made, but the court did consider the instructions, and reversed the judgment for error in them. They looked at the action of the court on the law.

The case of *Westfall* v. *Dungan et al.* 14 Ohio St. Rep. 276, is but a reiteration of decisions of this court on the same point, that a verdict will not be reviewed, when it appears from the record, that no motion for a new trial had been made, on the ground that the verdict was against the evidence, and such motion overruled.

*Kepwos, Admr.* v. *Sniveley's Admr.*, 19 Ohio R. 296, is to the same effect, and so is *Polk* v. *The State of Missouri*, 4 Mo. 544.

We come now to the decisions of this court, which appellee's counsel have cited.

The first is the case of *Barnes* v. *Barber et al.* 1 Gilm. 401, where it was held, and would be now held, and has ever been held, that a judgment will not be reversed for insufficiency

of evidence, if a motion for a new trial was not made in the court below.

In *Evans* v. *Lohr*, 2 Scam. 511, it was held, where the court has given improper instructions to the jury, or withheld such as are legal and appropriate, the proper course to adopt to enable the court to correct the error and do justice to the parties, is for counsel to apply for a new trial.

This was not the point in the case, and if it was, we are inclined to think the reason given for the practice was not a sound one, for by a motion for a new trial, the court could not correct the error in the instructions. No correction would have been available, as such a motion is never made until after the jury is discharged from the case. The point in the case was, the propriety of overruling defendant's motion in arrest of judgment, but the court did consider the instructions and passed upon them.

We do not think any of these citations, and they are all on this point, sustain appellee in his position.

It is the settled practice in this State, sanctioned by repeated decisions of this court, that the court trying a cause shall not instruct the jury as to the weight of evidence,—what it does or not, in fact, prove,—provided, it tends to establish the case attempted to be made. If offered by the plaintiff, he has a right that the jury shall weigh it and pass upon it, without the interference of the court. The ground of the motion was, that evidence given to the jury, without objection, did not sustain the issue on plaintiff's part, and the court, by excluding it, so affirmed. Was it not a clear case for instructions from the court as to the legal import of the contract, and was it not the right of the jury to find, from its terms, the intent of the parties as to the place of delivery, to be collected from the nature of the case and the circumstances attending it? Was not all the evidence submitted of which the nature of the case was susceptible, as set forth, especially in the fourth count? We think it was, and being so, it fulfilled one of th-

fundamental rules of evidence, and the plaintiff had the undoubted right to have the jury pass upon it.

We look upon the action of the circuit court in this case as equivalent to an instruction to the jury, that the evidence did not sustain any one count of the declaration, thus invading the province of the jury, and which, on well settled principles, was erroneous, and, by so doing, the court placed a construction upon the contract, which, in our opinion, was not warranted. Surely such errors can claim and receive the attention of an appellate court, as errors of law, which a motion for a new trial could not have reached or remedied. It cannot be denied, that excluding the evidence in this case was an instruction to the jury as in case of a non-suit, a practice which, though once in vogue in this State, has been long since abolished. It is superseded by the more proper mode of an instruction, moved by the defendant to the court, to instruct the jury, if a particular fact essential to a recovery, and alleged in the declaration, has not been proved, then they should find for the defendant. *Deshler* v. *Beers*, 32 Ill. 368. By excluding the evidence, the court decided it was not the intention of these parties that the delivery of these cattle should be at the place where they were fed, when the jury, if allowed, might have found it was the intention.

We hold, that the evidence tended to prove, not some contract in regard to the cattle, but the contract as stated in the fourth count of the declaration. We lay out of view all the argument about custom and usage in this particular kind of trade, and place the right to recover, on the fourth count, believing the evidence tends to support it.

Though it is true, as urged by appellee's counsel, nothing was said, at the time of the sale of these cattle, as to where the payment was to be made, that was to be implied from the nature of the transaction, and its surroundings. The averment in the fourth count, that they were to be paid for after being weighed at some convenient scales, is not, therefore, bad, because nothing was said about the place of payment.

It is not a fact affecting the question of delivery, and, as we have already said, might be rejected as surplusage, without disturbing the question of delivery. The law would imply that the payment was to be made on delivery, and such, indeed, was the express contract, as stated by the witness.

It is also urged by appellee, that there was a total absence of evidence on another essential point, that is, of readiness to perform on the part of the plaintiff. He says it was a contract of sale and delivery of cattle, to be paid for on delivery, and that the conditions are concurrent; that there was no tender of the money or offer to tender, and he insists that the tender should be made at the right time and place, and as the cattle were to be delivered *between* the 10th and 15th of May, the defendant was not in default on the 10th, when the plaintiff went to his residence for the cattle, and the delivery was not to be at the house of the defendant.

So far as the question of tender is involved, we are satisfied there was no necessity to make one. This court held, in construing a similar contract, in *Funk* v. *Hough*, 29 Ill. 145, where two acts were to be done at the same time, like selling and delivering and receiving and paying, in an action for non-delivery, it was only necessary for the plaintiff to aver and prove a readiness to pay, whether the other party was at the place ready to deliver or not. The plaintiff here, was not required to act until the defendant should deliver the cattle, the delivery of the cattle being a condition precedent to the performance of any act by the plaintiff. These cattle were to be paid for by the hundred pounds. Until they were weighed and delivered, no payment could be made. The plaintiff testified he went to the defendant's house, ready to receive the cattle and to pay for them, and so informed the defendant. The answer was, he could not get them. What, then, was the use of a tender or an offer to tender? Proof of a readiness to receive and pay was all the law required.

Upon the point, that plaintiff should have made another demand on the 15th of May, it is only necessary to say, that

it was proved by Brocker, the feeder of the cattle, that on the 7th of May he had delivered the cattle to the defendant, at the scales in Broadwell, on the Chicago & Alton Railroad.

What is the legitimate inference from this? Why, that defendant had sent the cattle to market by rail, and this being so, a demand upon him to deliver them on the 15th would have been equally unnecessary and unavailing. But the defendant's refusal, on the 10th, was not qualified—it was positive, and shut out all prospect of a delivery on a future day. His declaration, that plaintiff could not have the cattle, was equivalent to saying he repudiated the contract, and this, coupled with the fact he had taken them from the place where they were fed, relieved the plaintiff from the necessity of demanding them at that place.

We have looked into the cases of *Williams* v. *Claytor*, 1 Scam. 505, and *Rogers* v. *Brent*, 5 Gilm. 588, and deem them as supporting the views we have here expressed on the question of practice. In the last case, it is distinctly stated, it is the right of the party offering evidence in its proper order, tending to prove any necessary fact in the cause, to have it go to the jury, and that is all we have insisted upon in this case, believing the evidence tended to prove the fourth count, and afforded to the jury some ground to infer that the place of delivery of the cattle was the place where they were fed.

The judgment of the circuit court is reversed and the cause remanded, for other proceedings consistent with this opinion.

*Judgment reversed.*