(Decided 15th March, 1872.)

WILLIAM W. MAUGHLIN *vs.* JAMES D. PERRY and LAWRENCE J. WARREN.

*Specific Performance of an Agreement.*

W on the 9th of March, 1864, rented certain premises of which he was owner, to H, for three years, renewable for a like period, and covenanted for himself, his heirs and assigns, to sell and convey said property to H, his heirs and assigns, for the sum of $1,500, at any time before the expiration of the lease or tenancy. It was further covenanted that W should give H at least three months notice in writing before the expiration of the lease, of his intention not to renew, and in default of such notice, the lease was to continue for another term of three years, as also the privilege to purchase the property. On the 15th of March, 1867, W contracted to sell the property to M for $1,600, payable in instalments, which were paid as they became due. W died intestate before the termination of the lease, which by its provisions had become renewed for three years. The rights of H by *mesne* assignments, became vested in the appellees. On a bill filed on the 3d of March, 1870, six days before the expiration of the lease, by the appellees against the appellant, and the administrator of W, alleging that the complainants were ready to pay the stipulated sum, and desired to have a conveyance of the property, and asking for the specific performance of the agreement, it was HELD:

That the filing of the bill, and the offer to pay the price stipulated, was such a substantial compliance on the part of the assignees of H, with the terms of the covenant, as to entitle them to have it specifically executed.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by the appellees against the appellant, and Richard Wells, the administrator of John Wells. The facts of the case, together with the object of the bill, are sufficiently set out in the opinion of the Court. The Circuit Court, (PINKNEY, J.,) after hearing, decreed that the complainants should pay, or bring into Court, to be paid to the respondent Maughlin, within thirty days from the date of the decree, the sum of fifteen hundred dollars with interest thereon from the 9th of March, 1870; and that upon compliance with such requirement, the respondents should convey the property in question to the complainants.

From this decree the respondent Maughlin appealed.

The cause was argued before STEWART, BOWIE, GRASON, MILLER and ALVEY, J.

*L. M. Reynolds* and *T. A. Linthicum*, for the appellant, argued,

That the payment or tender of the money named in the agreement was a condition precedent to the appellees' right to a conveyance of the property, and there was no averment in the bill of any such payment or tender within the time within which the right was to be exercised—nor did it appear from any matter of fact stated that there was any excuse or reason why such tender was not made. *Benedict vs. Lynch*, 1 *Johns. Ch.*, 370; *Westerman vs. Means*, 1 *Jones*, 12 *Penn.*, 97; *Davis vs. Thomas*, 1 *Russell & Mylne*, 506; *Newman vs. Rogers*, 4 *Bro. Ch.*, 284.

As a matter of fact it was shown by the bill that the proper parties to whom tender or payment should have been made, were known to and within the reach of the complainants—

and no reason or excuse alleged why, before the filing of the bill, such payment or tender was not made.

The complainants, knowing the interests of Wells and Maughlin in the property, should have made a tender of the fifteen hundred dollars either to both or one of them, in order to have shown not only their willingness but ability to perform the condition of the contract, or should have paid the money into Court upon filing of the bill, and notified the defendants.

The filing of the bill six days before the termination of the lease, was no compliance, nor such an offer of compliance with the condition of the contract, as entitled the complainants to the relief prayed. *Ranelagh vs. Melton,* 34 *L. Journal, Equity,* 227; *Weston vs. Collins,* 34 *L. Journal, Equity,* 353.

The facts set forth in the bill, as ground for the relief prayed, having been denied by the answer, and the complainants not having entered a general replication to such answer, and having put their case solely upon the bill, answer and exhibits, are concluded by the averments and denials of the answer. *Rogers vs. Saunders,* 16 *Maine,* 97; *Warren vs. Twilley,* 10 *Md.,* 39; *Mason vs. Martin,* 4 *Md.,* 24.

No title to or right of property in the reversion vested in the appellees under the lease, and they forfeited no estate or right of property by their failure to make the tender. The right to acquire the reversion was dependent upon their performance of the precedent condition of paying or tendering the sum agreed upon. *Coke Litt., secs.* 325, 350; *Davis vs. Thomas,* 1 *Russell & Mylne,* 506; *City Bank vs. Smith,* 3 *G. & J.,* 265, 281; *Earle vs. Dawes,* 3 *Md. Ch. Dec.,* 230.

*William H. Cowan,* for the appellees.

In the contract in this case, fairness, certainty, mutuality and adequacy of consideration are embodied. These principles constitute the elements of a contract to be enforced as a right. 2 *Story's Eq. Juris., secs.* 751, 769; *Hall vs. Warren,* 9 *Ves.,* 608; *Greenway vs. Adams,* 12 *Ves.,* 395, 400; *King vs. Hamilton,* 4 *Peters,* 311–328; *Brashier vs. Graty,* 6 *Wheat.*

*R.,* 528; *Hopper vs. Hopper,* 1 *Green,* (*N. J.,*) 147; *Schroeppel vs. Hopper,* 20 *Barb.,* 425; *Herbert vs. Brewer,* 30 *Md.,* 301.

Time is not of the essence of the contract, unless the parties themselves in making the contract have clearly considered time an important part thereof.

None of the authorities disregard the acknowledged principle of equity, that time will not be considered of the essence of a contract. To override this principle some fact must be invoked, which would show a decree for a specific execution to be inequitable. No such fact is to be found in this case. All the circumstances of the case appeal to a Court of Equity, to exert its power to prevent forfeiture. The idea of compensation is not in the case, because no delay or negligence is chargeable to the plaintiffs. The parties are in *statu quo.* 2 *Story's Equity Juris.,* sec. 776; *Hipwell vs. Knight,* 1 *Younge & Coll,* 415; *Coslake vs. Till,* 1 *Russell,* 376; *Doboret vs. Rothschild,* 1 *Simon & Stu.,* 390; *King vs. Wilson,* 6 *Beavan,* 124; *Seton vs. Glade,* 2 *Lead. Cases in Eq.,* notes 18, &c.

By special terms, or peculiar circumstances being embodied in the contract, time may be of its essence. The circumstances that will make time an essential part of the contract must be such, that the party resisting a decree for a specific performance cannot be placed in *statu quo* by a decree for a performance. *Ahl vs. Johnson,* 20 *Howard,* 511; *Williston vs. Williston,* 41 *Barb.,* 635; *Richmond vs. Robinson,* 12 *Mich.,* 193; *Hudson vs. Bertram,* 3 *Madd.,* 440; *Williams vs. Edwards,* 2 *Sim.,* 78; *Lloyd vs. Rippingale,* 1 *Y. & C.,* 410.

The filing of the bill of complaint, with the offer to comply with the terms of the covenant to purchase, and the expression of a readiness to pay the consideration, was a sufficient equitable tender to bar a default. *Scarborough vs. Arrant,* 25 *Texas,* 129; *Saint Paul Division vs. Brown,* 9 *Minn.,* 157.

Maughlin *vs.* Perry and Warren.

STEWART, J., delivered the opinion of the Court.

This cause having been heard on the bill and answer, without replication, and the agreements of the counsel of the parties filed, the facts alleged in the bill and admitted by the answer, together with the whole of the answer susceptible of proof, have been taken as true, and from the proceedings we glean the following facts which seem to be material:

John Wells, on the 9th of March, 1864, rented the property, of which he was the owner, to William Hyson for three years, renewable for a similar period, with the following covenant, which has occasioned the controversy in this case: "And the said party of the first part, for himself, his heirs and assigns, doth hereby covenant and agree with the party of the second part, his heirs and assigns, to sell and convey unto the party of the second part, his heirs and assigns, the above described property and premises, for the sum of $1500, at any time before the expiration of this lease or tenancy."

On the 15th of March, 1867, Wells contracted to sell the property to Maughlin for $1600, payable in short instalments, all of which have been paid.

Wells died intestate before the termination of the lease, which by its provisions had become renewed for three years; and Richard Wells, one of the respondents, is his administrator.

All the rights of Hyson now belong to Perry & Warren, the complainants. Under these circumstances, six days before. the expiration of the lease, this bill was filed, alleging that the complainants were ready to pay the stipulated sum, and desired to have a conveyance of the property, and praying for the specific performance of the covenant.

' This is resisted by Maughlin, on the ground that the acceptance of the terms proposed in the covenant has not been in time, nor in accordance with the covenant; and that the mere offer in the bill to pay the money is not a sufficient compliance with the provisions of the covenant.

.The only question to be determined from these facts disclosed by the record is, whether the filing of the bill and the

offer to pay the price stipulated, is such a substantial compliance with the terms of the covenant, as to entitle the complainants to a specific performance of the contract on the part of the lessor and his assigns.

Courts of Equity do not, ordinarily, regard time as of the essence of a contract, but will enforce it where there has not been a literal compliance with the terms, without inexcusable *laches* of the party insisting upon its performance. This is the case where the rights and remedies are mutual; Courts of Equity, rather inclining to uphold than to forfeit contracts, where there has been no culpable negligence, and where they can do full justice between the parties; but where there is a want of mutuality in the obligations arising from the transaction, time is essential as well in equity as at law, because it is not the province of a Court of Equity more than a Court of Law, to relieve parties from the substantial performance of their contracts.

Their power to decree a specific performance of contracts is not a matter of absolute right, but rests in the sound discretion of the Court, which is guided by well established rules regarding the infirmities of all human transactions, and designed to sustain the substantial merits of the case, and promote the ends of justice between the parties.

As a part of the consideration of the lease constituting the contract between the parties, Wells, the lessor, covenanted to sell the property to Hyson, his lessee, for $1500, at any time during the existence of the lease. This was a continual obligation running with the lease on the part of the lessor, with the option in the tenant to accept the same or not, within that time.

But, it seems Wells, before the right of Hyson to make his election had determined, made sale of the property to Maughlin, and died. Maughlin, with notice of the recorded contract between the parties, can acquire no greater right than possessed by Wells.

The contract has no express provision in regard to the casualty of death, or a transfer of the property by Wells, the

lessor. Courts of Equity must determine the rights of parties according to the broad principles of justice and fair dealing, and not by technical and refined distinctions ; and the two events—the death of Wells, and the transfer of the property antecedent thereto—afford just ground for the complainants to go into a Court of Equity, and have all the parties interested brought in, so that upon payment of the money they may be able to obtain a valid conveyance. This they could do at any time within the continuance of the tenancy. Upon the filing of the bill and tendering themselves ready to comply with the stipulation, they made their election.

The mere fact that the money was not paid when such an offer is tendered to the Court, is immaterial. This Court, in the case of *Smoot, et al. vs. Rea & Andrews,* 19 *Md.,* 406, when adjudicating upon a bill for specific performance, have said, that 'although relief in a Court of Equity will not be granted where there has been gross *laches* or neglect ; yet, " if there has not been a strict legal compliance with the terms of the contract, and the non-compliance does not go to the essence of the contract, relief will be granted," referring to 2 *Story's Eq.,* sec. 771. In the same case, it is further stated, that it is well settled that time is not generally deemed in equity as of the essence of the contract.

Some question was also made in that case as to the nature of the tender, to enable a party to claim specific performance of the contract, and the Court says, " in such cases, the technical rules covering pleas of tender in actions at law are inapplicable. To entitle a purchaser to demand a deed, it is sufficient that he is ready and offers to comply with the contract on his part, and has the ability to perform it." See also *Oliver vs. Palmer,* 11 *G. & J.,* 426. The liberal rule of construction adopted in that case will apply to this.

In secs. 775, 776 *of Story's Eq ,* it is said " that where the terms of an agreement have not been strictly complied with, or are incapable of being strictly complied with ; still, if there has not been gross negligence in the party, and it is conscien-

tious that the agreement should be performed; and if compensation may be made for an injury occasioned by non-compliance with the strict terms; in all such cases Courts of Equity will interfere, and decree a specific performance. For the doctrine of Courts of Equity is, not forfeiture, but compensation; and nothing but such a decree will, in such cases, do entire justice between the parties. Indeed, in some cases, Courts of Equity will decree a specific performance, not according to the letter of the contract, if that will be unconscientious; but they will modify it according to the change of circumstances."

"One of the most frequent occasions on which Courts of Equity are asked to decree a specific performance, is where the terms for the performance and completion of the contract have not, in point of time, been strictly complied with. Time is not generally deemed in equity to be of the essence of the contract, unless the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the contrac is true that Courts of Equity have regard to time, so f respects the good faith and diligence of the partie circumstances of a reasonable nature have disabl from a strict compliance, or if he comes, *recent* for a specific performance, the suit is treated and generally with favor by the Court."

We have referred to these sections as s and aim of a Court of Equity in all cases fect substantially the contracts of parties faith, and attempted, with due diligenc summated. We do not understand th extent of changing the contract the make, but they will carry out and according to the real intention of the state of circumstances that may arise, row and technical rules of constructi

Where it is manifest the parties h ence to time, and that constitutes o

contract, a Court of Equity, as well as Law, will carry out the contract accordingly.

Under the circumstances of this case we think the time material, and that the tenant was bound to make his election whether he would or not purchase the property before his lease expired; but as to the payment of the money after Wells had made another sale, and had died, it was especially proper, in order to procure such a title as Wells had contracted to give him, that he, or his assignees, should within the prescribed time, invoke the aid of a Court of Equity, as has been done in this case.

The circumstances referred to, after the execution of the contract, rendered such a step advisable, and certainly afford a sufficient excuse for the non-payment of the money—after they had accepted the terms proposed, and tendered himself ready to pay in the manner indicated. It is not perceived upon what grounds of equity this conclusion can be resisted, what way the respondents can be injured by such inter- of a Court of Equity.

lly concur in the ruling of the Circuit Court, and addition, to the authorities cited by the learned ng his opinion: *O'Neil vs. Jones,* 1 *Rid.,* 170; s, *et al.,* 2 *B. Monroe,* 439; *Magoffin vs. Holt,* ., 95.

*Decree affirmed.*