RAY *v.* THOMAS *et al.*

(*Nashville,* December Term, 1949.)

Opinion filed July 15, 1950.

196

C. A. DAVIS and F. C. SEWELL, both of Memphis, for appellant.

ARMSTRONG, McCADDEN, ALLEN, BRADEN & GOODMAN, SAM TAUBENBLATT, and RICHARD ALLEN, all of Memphis, for appellees.

Mr. Justice Gailor delivered the opinion of the Court.

The single question presented by this appeal is the proper construction of the following peculiar provision of a trust deed given to secure the balance of purchase money on river lands in Tipton County:

"First party reserves the right to have said land surveyed at the first time the Mississippi River reaches a stage of 2.2 feet on the Memphis gauge; should such survey show less than 2200 acres, principal note No. 13 shall be credited with an amount equal to $10 per acre for such deficiency; should there be an excess of 2200 acres this trust deed shall secure an additional sum equal to $10 per acre for such excess, due and payable on or before January 1, 1955, with interest at 6% from January 1, 1942, payable annually on January 1st."

The "first party" was F. J. Allen, who had purchased the four tracts of river land involved, from the ancestors of the Defendants here, and in the warranty deed by which he acquired title, after the description by metes and bounds of tract #4, there was the following provision:

"The above description is based upon a survey of part of said lands, made in the years 1912 and 1913, since which dates a part of said tract has been washed away or encroached upon by the Mississippi River and it is understood and agreed that the grantors herein make no covenant or warranty as to the number of acres remaining in said tract by reason of the encroachment or washing of said River."

The warranty deed to Allen was dated the 30th day of December 1941, and registered in the Register's Office of Tipton County, Tennessee, on the 30th day of March 1942. Allen's trust deed to the Union Planters National Bank & Trust Company, from which we quoted the disputed clause above, was dated the 30th day of December 1941, and it too was registered on the 30th day of March 1942. By warranty deed, recorded March 31, 1942, Allen conveyed the property to R. T. Kuhn, and that deed contains a description of the property conveyed which is copied from that in the warranty deed to Allen with the statement that the description of tract #4 was based on a survey of the year 1912 or 1913, and that it was understood and agreed that the grantor made no covenant or warranty as to the number of acres remaining in said tract. Thereafter, by warranty deed, the heirs of Kuhn transferred the property to the Complainant G. D. Ray, and this warranty deed was recorded on February 2, 1943, and contained the same provision with regard to the warranty of acreage. The various deeds are made exhibits to the original bill in this cause. By the warranty deed by which the Complainant acquired his title, it was stated:

". . . that the same is unencumbered, except an indebtedness of $39,000 . . .."

On July 15, 1949, in the Chancery Court of Shelby County, G. D. Ray, as Complainant, filed the original bill in this cause against the heirs and descendants of Aaron Thomas and Robert Cohen, from whom Allen had purchased the property and who were the original owners and holders of the indebtedness secured by the trust deed in question, and by the bill as it was finally amended, Ray sought to modify the amount of the re-

maining indebtedness on the basis of the clause of the trust deed above quoted, alleging that at the time of the filing of the bill, and apparently on the basis of a survey finally made on November 2, 1944, there was a deficiency in the amount of land described in the trust deed of December 1941. The pertinent prayer of the bill is indefinite, and is as follows:

"That when this cause is heard, complainant be given credit on the balance of the indebtedness due the defendants for the deficiency of land, as provided for in said Deed of Trust, together with interest thereon at the rate of six per cent."

By an amendment to the bill which was filed on February 18, 1950, Complainant made the following additional allegation:

"1. That the facts and circumstances set out in paragraph XII of his original bill covering the number of acres of land on a 2.2 Memphis stage of the Mississippi River are a matter of record with the U. S. Engineers of this district and would *certainly conform to the survey clause set out in the deed of trust.*" (Our emphasis.)

To the bill, and to the bill as amended, leave of Court having been obtained, the Defendants demurred on two grounds:

"1. The Original Bill fails to state a cause of action against demurrants, or any of them, for the reason that it affirmatively appears therefrom that the right of variation of the purchase money indebtedness secured by the deed of trust, Exhibit IV to the Original Bill, attempted to be asserted in the Original Bill, is personal to F. J. Allen and wife, remote grantors of complainant and cannot be asserted by complainant.

"2. The Original Bill fails to state a cause of action against demurrants, or any of them, for the reason that it affirmatively appears therefrom that any right of variation of the purchase money indebtedness secured by the deed of trust, Exhibit IV to the Original Bill, attempted to be asserted in the Original Bill, is subject to a condition precedent that the land in question be surveyed 'at the first time the Mississippi River reaches a stage of 2.2 feet on the Memphis gauge,' and the failure of compliance with said express condition precedent affirmatively appears from said Original Bill."

The Chancellor sustained the demurrer to the bill, and the bill as amended, giving as his reason only the following:

". . . being of opinion that the demurrers are well taken, and that said Original Bill, as amended in the Amended Bill, fails to state a cause of action and there is no equity on the face of the bill as amended; the court is of opinion that the demurrer is good in part and fatal to the bill; but to facilitate review, sustain the entire demurrer."

In addition to the fact that Allen had transferred the property to Kuhn on December 30, 1941, and that the trust deed from Allen to the Union Planters National Bank & Trust Company, and the warranty deed from Allen to Kuhn were recorded on successive days in March 1942, it appears from statements in the bill that no survey of the property was made or attempted by Allen or anyone acting by or for him, at the "first time the Mississippi River reaches a stage of 2.2 feet on the Memphis gauge," or at any other time. That in March 1942, Kuhn had a survey made of the land when the Memphis gauge was not at 2.2 feet, but at a time when

it is alleged, ''that there would have been no difference between the survey made in March 1942, and a survey made on a 2.2 gauge of the river.'' That in October 1943, the Mississippi River did reach a 2.2 point on the gauge at Memphis and that Complainant attempted then to have a survey made but could not do so. It is not alleged in the bill, or in the bill as amended, that October 19, 1943, was the first time that the river had reached the 2.2 point on the Memphis gauge, after the execution of the trust deed.

██ ██ Further facts are immaterial to a proper construction of the language, ''first party reserves the right to have said land surveyed at the first time the Mississippi River reaches a stage of 2.2 feet on the Memphis gauge. . . .'' (1) The first party was F. J. Allen, and he is seeking no relief. (2) It is not alleged in the bill, or the bill as amended, that any survey of the land was made or attempted, at the first time the Mississippi River reached the stage of 2.2 feet on the Memphis gauge.

At most, the language quoted gave to Allen an elective right in the nature of an option, by which he might if he chose, at the time and under the circumstances defined, have re-surveyed the property for the purpose of modifying the indebtedness secured by the trust deed. The paragraph before, and the paragraph after this clause of the trust deed, give rights to the ''first party, his successors in title or assigns,'' so that we are forced to construe the language here as meaning what it says and giving a right special to the ''first party.'' The primary rule of construction is that language means what it says, and considering the disputed clause in its position between the two other clauses where ''heirs and assigns'' are named, the omission of the first party's

heirs and assigns is certainly indicative of an intention that the right granted is personal and that "heirs and assigns" were intentionally omitted. Thompson on Real Property, Covenants, Vol. 7, Section 3627; 21 C..J. S., Covenants, Section 60.

■ Neither in the bill, nor in the brief, is there any attempt to explain what peculiar significance there may have been for the parties in fixing the survey as at the first time the Mississippi River reached a 2.2 point on the Memphis gauge. In the absence of explanation, we are compelled to assume that the language had significance and was essential to the right granted. The rule is uniform that both at law and in equity, time is of the essence of an option contract. The rule is necessary from the very nature of the contract itself. Williston on Contracts, Vol. 3, Section 853; 17 C. J. S., Contracts, Section 504, p. 1072; *G. S. Johnson Co.* v. *Nevada Packard Mines Co.*, D. C., 272 F. 291; *Life Preserver Suit Co.* v. *Nat'l. Life Preserver Co.*, 2 Cir., 252 F. 139, 141.

"Time is always of the essence of a unilateral contract." *Kerr* v. *Purdy,* 51 N. Y. 629; *Maughlin* v. *Perry* and *Warren,* 35 Md. 352; *Smith* v. *Gillett,* 50 Ill. 290, 298.

■ This is merely an application of the well-established and uniform rule that the acceptance of an offer must exactly and precisely accord with the terms of the offer. Here, Allen's acceptance was to be by acts, not words. To make his acceptance effective, he had to have the survey made at the first time the Mississippi River reached a 2.2 point on the Memphis gauge.

■ We are of opinion that when Allen transferred the property, the right was extinguished and the provision was no longer a pertinent part of the trust deed. Furthermore, Complainant's pleading was fatally de-

fective in its admission that no survey had been made or attempted when, after December 30, 1941, the River first reached the 2.2 point on the Memphis gauge.

Appellant, to support an insistence that substantial compliance is all that is required, and that in equity, time is not ordinarily of the essence of a contract, cites *Farris* v. *Ferguson,* 146 Tenn. 498, 242 S. W. 873, 23 A. L. R. 624; *Farrar* v. *Nashville, C. & St. L. Railroad,* 162 Tenn. 313, 36 S. W. (2d) 95; *Interstate Building Corp.* v. *Hillis,* 17 Tenn. App. 171, 66 S. W. (2d) 597. In none of these cases was a unilateral or option contract in question and, therefore, we think these authorities are not in point. The Appellees, in an excellent brief, cite two cases which are very close to the present facts and which support our conclusion. In *Rogers Bros. Coal Co.* v. *Day,* 222 Ky. 443, 1 S. W. (2d) 540, the Court had for construction a deed which contained the following provision:

"Said parties of second part are hereby granted the privilege of taking the above-described interest for 800 acres, or to survey the said tract at the expense of second party at the election of second party; i. e., second parties may elect which plan they shall pay upon, price per acre to be $50. . . . It is mutually agreed that, if the second party elects to make survey, the said survey shall be made within the year 1917. . . . It is further agreed that if survey is not made within the present year the acreage shall be taken at 800 acres and note executed for the balance due thereon as herein stipulated."

No survey was made until 1918, and the Court saying, "Time is of the essence of a contract giving to one of the parties an option to purchase property", held that time was of the essence of the contract, and that the survey in 1918 was too late.

In *Jennings* v. *Bowman*, 106 S. C. 455, 91 S. E. 731, the parties, Plaintiff and Defendant, agreed to a partition of certain property, and in that connection, signed an agreement which contained the following clause:

"The prices and considerations herein named are based upon actual acreage, and each of said parties shall have the right to survey the lands above referred to, and any excess or shortage in acreage over or under the acreage stated in the deeds to be paid for, or deducted, at the rates herein. Surveys under this contract are to be made within ninety days from the date hereof; otherwise the acreage stated is to stand."

Although it appeared that a survey was commenced on the 90th day after the date of the agreement, it was not completed within the 90 days. In the course of the opinion, the Court said, in 91 S. E. at page 732: "There is admittedly but one question, and that is: Shall the parties be held to abide the letter of the agreement?" and the Court held that they should be so held.

Because of certain conferences and negotiations looking to an amicable settlement of the difficulty, Complainants insist that the Defendants are estopped "to deny the validity of the claim." It does not appear that either party changed his position or suffered any prejudice by reason of these negotiations. Essential elements of waiver and estoppel are absent and are not alleged in the bill or its amendment. Gibson's Suits in Chy., 1937 ed., Sections 67, 334.

The assignments of error are overruled and the decree of the Chancellor is in all respects, affirmed at the cost of the Appellants.

All concur.