James M. ALLEN, Plaintiff–Appellee,

v.

NATIONAL ADVERTISING COMPANY and Outdoor West, Inc., Defendants–Appellants.

Court of Appeals of Tennessee, Eastern Section.

July 2, 1990.

Permission to Appeal Denied by Supreme Court Oct. 22, 1990.

Thomas C. Jessee, Johnson City, for defendant-appellant Outdoor West, Inc.

Walter Lee Davis, Jr., Johnson City, for plaintiff-appellee.

## OPINION

SANDERS, Presiding Judge (Eastern Section).

The Defendant, Outdoor West, Inc., has appealed from a chancery decree holding the Plaintiff had timely exercised his option to purchase under two separate leases, and awarding damages.

On September 12, 1977, the Plaintiff–Appellee, James M. Allen (Allen), entered into a lease agreement with National Advertising Company (National), which permitted National to erect and maintain a "billboard" for outdoor advertising upon his property. The lease was for a period of five years. As pertinent here, the lease contained the following provision: "The Company [Lessee] will renew for a second five (5) years with a 15% increase in rental. If you [Lessor] wish to purchase our structures complete with lights, etc., the cost will be $6,500. If you wish us to remove the structures complete we will do this." This will be referred to as the first lease.

On November 6, 1978, Allen and National entered into a second lease for National to erect a billboard on another tract of land belonging to Allen. This lease was for a period of five years and, as pertinent here, provided: "1. After the first five years, if the lessor wishes to purchase the lessee's structures complete with lights, etc. the lessee will sell to lessor for $6500.00. 2. If the property is sold or developed, the lessor may terminate this lease upon giving the lessee 90 days written notice of termination. The lessee agrees to remove the display within the 90 day period. 3. The lessee agrees to renew for a second 5 years with a 15% increase in annual rent." This will be referred to as the second lease.

In March, 1983, National sold to Defendant–Appellant Outdoor West, Inc. (Outdoor) all of its outdoor advertising structures and all of its interest in leases of property upon which they were erected.

Each of the Allen leases was renewed upon the expiration of the original five-year term. However, Allen made no offer to exercise his option to purchase under either of the leases until December 11, 1987, when he had his attorney write a letter expressing his desire to exercise his option to purchase under the second lease as of March 1, 1988. Outdoor refused to sell the billboard, saying any rights Mr. Allen had under his option to purchase expired in 1983.

On July 1, 1988, Allen filed suit against National and Outdoor. In his complaint he alleged he had exercised his option under the second lease but Outdoor refused to transfer the property to him. He also stated he anticipated that whenever he exercised his option under the first lease Outdoor would also refuse. The complaint alleged National obtained permits for the erection and maintenance of the billboards on the properties but the properties are now within the corporate limits of Johnson City, which no longer issues permits for billboards within the corporate limits, and if the permits should expire new ones could not be obtained. He asked the court to declare the rights of the parties under the leases and for a restraining order restraining Outdoor from taking any action which would result in termination of the permits for the billboards. He also asked for an order directing Outdoor to have the Department of Highways transfer the permits to him. He asked the court to award him compensatory and punitive damages.

On July 8, 1988, Allen tendered into court $6,500 as the purchase price under his second lease. Subsequently, on September 2, 1988, Allen's attorney wrote a letter to Outdoor's attorney stating he was giving notice of Allen's intention to exer-

cise his option to purchase under the first lease. On September 7 he amended his original complaint, asking for the same relief under the first lease as he had asked for under the second lease. On August 31, 1988, he tendered an additional $6,500 into court to cover the first lease.

The Defendant, for answer to the complaint as amended, asserted as an affirmative defense that the Plaintiff had failed to timely exercise his option to purchase under either of the leases and was now barred.

Upon the hearing, the parties told the court they believed they could stipulate the controlling facts in the case. This resulted in a 57–page record comprised primarily of argument in support of their respective contentions. Seven exhibits were filed which we think furnish sufficient facts for our determination of the case.

The chancellor found the issues in favor of the Plaintiff and against Outdoor. He found Allen had properly exercised his option under each of the leases. He ordered the $13,000 tendered into court turned over to Outdoor but awarded Allen a judgment against Outdoor for $32,357.26. The case was dismissed as to National.

Outdoor has appealed, saying the court was in error. We agree, and reverse for the reasons hereinafter set forth.

■ The Appellant insists that, since the option to purchase was a unilateral or option contract, contrary to the ordinary contract which is binding on both parties, time was of the essence. It relies on the case of *Ray v. Thomas*, 191 Tenn. 195, 232 S.W.2d 32 (1950) as supportive of its insistence. *Ray* appears to be the landmark case in this jurisdiction on unilateral or option contracts. In *Ray* the option in the document relied upon in pertinent part said: "First party reserves the right to have said land surveyed at the first time the Mississippi River reaches Stage 2.2 feet on the Memphis gauge...." No survey was made "the first time" the Mississippi reached Stage 2.2 feet, but a later survey showed a deficiency in acreage. In sustaining a demurrer to the complaint, our supreme court said:

Neither in the bill, nor in the brief, is there any attempt to explain what peculiar significance there may have been for the parties in fixing the survey as at the first time the Mississippi River reached a 2.2 point on the Memphis gauge. In the absence of explanation, we are compelled to assume that the language had significance and was essential to the right granted. The rule is uniform that both at law and in equity, time is of the essence of an option contract. The rule is necessary from the very nature of the contract, itself. Williston on Contracts, Vol. 3, sec. 853; 17 C.J.S., Contracts, § 504, p. 1072; *G. S. Johnson Co. v. Nevada Packard Mines Co.*, D.C., 272 F. 291; *Life Preserver Suit Co. v. Nat'l Life Preserver Co.*, 2 Cir., 252 F. 139, 141.

"Time is always of the essence of a unilateral contract." *Kerr v. Purdy*, 51 N.Y. 629; *Maughlin v. Perry and Warren*, 35 Md. 352; *Smith v. Gillett*, 50 Ill. 290, 298.

This is merely an application of the well-established and uniform rule that the acceptance of an offer must exactly and precisely accord with the terms of the offer. Here, Allen's acceptance was to be by acts, not words. To make his acceptance effective, he had to have the survey made at the first time the Mississippi River reached a 2.2 point on the Memphis gauge.

*Id.* 232 S.W.2d at pp. 34, 35.

We consider the options in issue in light of the rule set out above. The first lease was dated September 12, 1977. It was for a period of five years, which would have ended on September 11, 1982. Unlike the second lease, the option to purchase was not limited to "the first five years." The lease was renewed for five years, which expired on September 11, 1987. No offer to exercise the option was made until September 2, 1988, when Allen's attorney wrote Outdoor's attorney the following letter: "In accordance with the terms of the enclosed Lease Agreements by and between National Advertising Company and James M. Allen, c/o Griffith Motors, Inc.,

P.O. Box K, EKS, Johnson City, Tennessee, one of which is dated November 6, 1978, and bears Lease Nos. 50321A, 50322A, 50323A, and 50324A, and another dated September 12, 1977, notice is hereby given that James M. Allen hereby elects to exercise his option to purchase the sign structures with all of the appurtenances including lights, etc. effective March 1, 1988." This was approximately 11 years after the original lease was executed, and approximately one year after the five-year renewal lease had expired.

In his determination of the case the chancellor filed a memorandum opinion but did not set forth his rationale in determining the issues. In addressing his findings on the first lease, he said: "The Court finds in reference to the parties *September 12, 1979*, lease and option to purchase agreement: 1. Plaintiff validly exercised his option to purchase, effective August, 1988." (Emphasis ours.) It is apparent from this statement the chancellor was unaware the lease had expired approximately a year prior to the notice being given. Also, we fail to find anything in the record to support the chancellor's finding the "Plaintiff validly exercised his option to purchase, *effective August, 1988.*" (Emphasis ours.) The only thing Plaintiff did in August relating to the first lease was to deposit $6,500 with the clerk and master. The letter written to Outdoor's counsel expressing an intention to purchase the billboard was in September and the letter states: "James M. Allen hereby elects to exercise his option to purchase the sign structures with all appurtenances including lights, etc. *effective March 1, 1988.*" (Emphasis ours.) This was some six months prior to making a deposit in court or even notifying Outdoor of his intention to exercise the option.

The second lease, which was dated November 6, 1978, provided: "*After the first five years*, if the lessor wishes to purchase the leased structures complete with lights, etc. the lessee will sell to lessor for $6,500.00." (Emphasis ours.) The lease was for five years and expired on November 5, 1983. The lessor failed to exercise his option, but renewed the lease for an additional five years. On December 11, 1987, Allen's attorney wrote the following letter to National, with a copy to Outdoor:

"RE: Lease with James M. Allen dated November 6, 1978

"Gentlemen:

"In acordance with the terms of the captioned lease agreement, which also bears the notations 'Lease Nos. 50321A, 50322A, 50323A and 50324A', notice is hereby given that James M. Allen hereby elects to exercise his option to purchase the sign structure with all of its appurtenances including lights, etc. effective March 1, 1988.

"Mr. Allen would like to have the transition of present sign advertisers from you to him as smooth as possible so as not to create any ill feelings and to, hopefully, not deprive them of their current advertising spaces after March 1. He might, therefore, be agreeable to honoring your sign contracts with these advertisers should they extend past March 1, 1988, but he would need to see a copy of the existing sign rental contracts with the current advertisers—Camara Inn, Hardee's, and Dixie Pottery. Would you please send copies of your sign rental agreements with these three advertisers to me?

"Mr. Allen would also request that you notify the Johnson City Power Board that the electrical service on this sign in your name will be terminated as of March 1, 1988, and that thereafter it should be in the name of James M. Allen. Mr. Allen's billing address will be P. 0. Box 5427, EKS, Johnson City, TN 37603.

"Mr. Allen would also expect a transfer of the existing State and City sign permits, which we understand are usable only for that sign at that location and may not be transferred to other locations.

"Mr. Allen understands that you have some arrangement with Outdoor West, Inc. of Tennessee with regard to these signs and we are, accordingly, copying Outdoor West with this letter. Mr. Allen does not know exactly what your relationship with them is but he knows he has been receiving

checks from them in recent years instead of from you.

"Mr. Allen informs me that he has been paid in advance for rental under your lease for some period of time and he will credit you any unearned portion of that rent at closing on March 1, 1988.

"Mr. Allen will, of course, need a Bill of Sale and I have prepared a draft of such an instrument which I enclose for your review. Pleae advise if you have any suggested changes.

"I look forward to hearing from you."

It is observed the letter was written more than four years after the expiration of the original five-year lease at which time Mr. Allen was authorized to exercise his option. No tender of the purchase price was made nor was any mention made as to when or how Mr. Allen intended to pay the purchase price. In fact, no tender of the purchase price was made until July 8, 1988, which was after suit was filed in this proceeding. The letter also contemplates a premature termination of Outdoor's lease, which is not provided for in the lease. Also, the letter states: "Mr. Allen would also expect a transfer of the existing State and City sign permits...." This clearly is a condition which was not provided for in the option. In his argument before the court, counsel for Mr. Allen repeatedly stated the billboards would be worthless to Mr. Allen "except for firewood" without the state and city sign permits. This was so because the property is now in the corporate limits of Johnson City and the city would not issue any new permits.

In the case of *Adams v. Swift*, 500 S.W.2d 437 (1973) the plaintiff was given an option to purchase a tract of land. The option stated: "Said option to purchase may be exercised by second party at any time prior to January 20, 1970." The sale price was to be for cash. On January 15, 1970, complainant wrote defendant a letter saying: "Pursuant to the terms and conditions of an option agreement dated September 20, 1969, the undersigned hereby gives notice that he desires to exercise the option to purchase the property as therein set out. At the present time the deed and title has been ordered and we are prepared to close this transaction within the next few days. We will be in touch with you to set a convenient date with you and your agent, for closing." On January 28 plaintiff wrote the defendant another letter saying they would close the matter on February 2. Defendant refused to sell and complainant sued for specific performance. The chancellor refused to enforce the option. In affirming the chancellor on appeal, the court said:

> [W]e are of the opinion that the Chancellor correctly concluded that the complainant did not comply with the expressed terms of the option contract because the purchase price was not paid or tendered to defendants on or prior to the 20th day of January, 1970, upon which date the option expired.
>
> The contract does not provide that the option may be exercised simply by giving of notice and it plainly means that, in order for same to be exercised, it was necessary for complainant to pay or tender to the defendants the balance of said purchase price, which would have been $14,600.00, on or before January 20, 1970.

\*     \*     \*     \*     \*     \*

In *Ray v. Thomas* (1949), 191 Tenn. 195, 232 S.W.2d 32, the Supreme Court held that the acceptance of an offer must be exactly and precisely in accord with the terms of the offer.

In the unreported opinion of this Court in *Goodman v. Bohannon* (filed at Nashville on January 8, 1971), it is said that:

> "The failure to tender performance within thirty days as required by the agreement was fatal to any rights of complainant.
>
> The provisions of an offer as to time, place, and manner of acceptance must be complied with. 17 C.J.S. Contract § 42, p. 676.
>
> Ordinarily time is of the essence of an option, and acceptance must be made and conditions performed within the time limited by the option. 91 C.J.S. Vendor and Purchaser § 11, p. 859."

In the case of *Jones v. Horner*, 36 Tenn. App. 657, 260 S.W.2d 198 (1953), Jones

leased property from Mrs. Horner. The lease gave Jones the exclusive option to purchase the property during the term of the lease. It then provided: "It is further agreed and understood that should second party elect said option he may exercise same by payment or tender of the agreed purchase price unto the first party or her designated agent." Two days before the expiration of the lease Jones sent Mrs. Horner a letter saying: "Notice is hereby given you that I will exercise the option which you and I executed on the 14th day of January, 1951, with a life of two (2) years for the sale of the land which you own in Bradley County, Tennessees.... You are hereby notified to furnish me a warranty deed conveying a good, clear, free and unencumbered title to this property. Upon receipt of such a deed I will deliver you the balance of the purchase price in cash." No payment or tender of the purchase price was made during the term of the lease. Horner refused to convey the property and Jones sued for specific performance. The chancellor declined Jones's request. In affirming the chancellor on appeal, the court said:

We think the Chancellor was correct. An option is a unilateral contract whereby the optionor for a valuable consideration grants the optionee a right to make a contract of purchase but does not bind the optionee to do so; the optionor is bound during the life of the option, but the optionee is not. 55 Am.Jur. 492, sec. 27 et seq.

It is a continuing offer to sell irrevocable during the option period. Id. sec. 38.

Its transition into a contract to purchase can be effected only by an unqualified unconditional acceptance in accordance with the terms and time specified.

Appellee Argues in his brief he was not required to exercise his option in the second lease at the end of the first five years. He argues as follows: "The Court did not err in holding that the phrase 'After the first five years ...' in an option clause does not mean that the optionee can be exercised only precisely at the end of the first five years. When would that be? For thirty minutes after midnight on the fifth anniversary? For ten days? For ten business days? The option is simply part of the lease and as long as the lease is in effect, the option is in effect. When the lease was renewed, all its terms, including the option, were renewed." Appellee cites us to no authority to support this argument, nor have we found any. But the general rule is stated in 17 C.J.S. Contracts § 51 as follows:

Where no time is fixed in the offer it expires at the end of a reasonable time unless the parties treat the offer as continuing in force. What is a reasonable time depends largely on the nature of the particular offer and the circumstances of the case. An offer to buy or sell land would not require so prompt an acceptance as an offer to buy or sell chattels, corporate stock, etc., of a perishable character or of fluctuating value. The circumstances of the case or the customs and usages of the trade may impose a limitation of time on an offer. Where an oral offer is made to another and he goes away without accepting it, it would seem that ordinarily the offer is to be considered as having lapsed.

*Options.* Any delay in accepting an option will ordinarily be viewed with strictness, for the reason that the party seeking to enforce performance is not himself bound.

*Also see Tullahoma Concrete Pipe Company, Inc. v. T. E. Gillespie Construction Company,* 56 Tenn.App. 208, 405 S.W.2d 657 (1966).

We hold Allen failed to exercise his option under either the first or second lease in accordance with the terms of the offer and neither of the options was exercised within a reasonable time under the circumstances of the case.

The decree of the chancellor is reversed and the complaint dismissed. The cost of the cause is taxed to the Appellee and the case is remanded for collection of cost.

GODDARD and FRANKS, JJ., concur.