Anderson-Tully Co. v. Thompson.

Anderson-Tully Co. *et al. v.* Thompson *et al.*
State, *ex rel.* Raine, *v.* Tate, Sheriff.*

(*Jackson.* April Term, 1915.)

1. **EQUITY.** Jurisdiction. Lands in another State.

An equity court has no jurisdiction to entertain a suit to try title to or to recover possession of land, or to enjoin a threatened trespass, where the land is situated in another State, so that, to enforce its decree, the process of the court would have to act upon the property, since such actions are local, not transitory, while equity acts *in personam*, not *in rem.* (*Post, p.* 87.)

Cases cited and approved: Penn v. Lord Baltimore, 1 Vezey, 148; Arglosse v. Muschamp, 1 Vernon, 75; Earl of Kildare v. Sir Morrice Eustace and Fitzgerald, 1 Vernon, 419; Toller v. Carteret, 2 Vernon, 494; Watkins v. Holman, 16 Peters, 25; Watts v. Waddle, 6 Peters, 389; Pennoyer v. Neff, 95 U. S., 723; Burnley v. Stevenson, 24 Ohio St., 478; Seixas v. King, 39 La. Ann., 510; Johnson v. Kimbro, 40 Tenn., 557; Miller v. Birdsong, 66 Tenn., 531; W. N. Tel. Co. v. W. & A. R. R. Co., 67 Tenn., 54-61; Kirklin v. Atlas Svgs. & Loan Assn. (Tenn. Ch. App.), 60 S. W., 149; Miss. & Mo. R. R. Co. v. Ward, 67 U. S., 485; Nor. Ind. R. R. Co. v. Mich. Cent. R. R. Co., 56 U. S., 232; Salton Sea Cases, 172 Fed., 792; Great Falls Mfg. Co. v. Worster, 23 N. H., 462; Mattix v. Swepston, 127 Tenn., 693.

Cases cited and distinguished: Telegraph Co. y. Railway, 67 Tenn., 54; Massie v. Watts, 6 Cranch, 148.

2. **EQUITY.** Jurisdiction of person. Enforcement of contract concerning foreign lands.

Where plaintiffs, by contract with the defendants, had the right to remove timber from certain lands in another State, a court

---

*The authorities passing upon jurisdiction of equity over suits affecting real property in another State or county are presented in the notes in 69 L. R. A., 673; 23 L. R. A. (N. S.), 924, and 27 L. R. A. (N. S.), 420. Specifically as to jurisdiction to enjoin acts with respect to real property in another State see notes in 69 L. R. A., 689; 7 L. R. A. (N. S.), 114, and 25 L. R. A. (N. S.), 917.

of equity, having jurisdiction of the persons of defendants, could restrain them, from unlawfully interfering with the plaintiffs in removing the timber under the contract, although the rights involved grew out of such real estate, since the only action required of defendants, to afford the plaintiffs a complete remedy, was merely to refrain from unlawfully and fraudulently interfering by themselves or servants.   (*Pos . p.* 89.)

### FROM SHELBY.

In Anderson-Tully v. Thompson:

Appeal from the Chancery Court of Shelby county. —F. H. HEISKELL, Judge.

BROWN & ANDERSON, for appellant.

THOS. M. SCRUGGS, for appellee.

In State, *ex rel.* v. Tate:

Appeal from the Probate Court of Shelby County.— J. S. GALLOWAY, Judge.

T. M. SCRUGGS, for appellant.

BROWN & ANDERSON, for appellee.

MR. JUSTICE FANCHER delivered the opinion of the Court.

The question presented in each of these cases, which were tried together, is whether or not the chancery court had jurisdiction to enjoin the defendants E. D., J. M., and Frank Thompson from interfering with complainants Anderson-Tully Company, their agents,

132Tenn.6

servants, and employees, from removing timber cut from certain lands in the State of Arkansas. The Anderson-Tully Company had conveyed to defendants these lands, reserving the right to cut and remove the merchantable timber therefrom until January 1, 1914.

It was charged that the Thompsons, for the purpose of delaying the cutting and removing of the timber, had leased all available landing points along the Mississippi river, it appearing that the lands lie along the river, and that the only means of removing the timber was by access to the river; that in addition to securing the landing points, defendants had obstructed a bridge, which was used as a means of getting the timber out, by building a wire fence across it, and had threatened that the servants and employees of complainants would be arrested or bodily injured if they continued to use the means provided to get the timber out, and otherwise obstructing the removal thereof within the time stipulated in the deed.

It was charged that these obstructive measures were resorted to in order that defendants might become the owners of the timber left on the land. The bill prayed for an injunction restraining these various acts of the defendants. Fiat was obtained and the injunction issued and executed.

The bill was filed in August, 1913. On January 7, 1914, an amended and supplemental bill was filed by complainants, alleging that they had been delayed more than a month in their work on account of these interferences, setting out the various means resorted

to, and charging that since the filing of the bill and notwithstanding the injunction the defendants had continued threatening the use of a shotgun if the agent of complainants should attempt to go upon the lands, and that they did not intend to permit any more hauling from the land.

It was stated that approximately 400,000 feet of timber was cut lying on the ground, which was personal property under the laws of Arkansas, and complainants prayed the court for an extension of thirty days' time within which to remove the logs, and for injunction. Further injunction was issued, directing defendants to refrain from interfering in any manner with the Anderson-Tully Company in the removal of the timber cut before December 31st, which was still on the lands, and also directing that complainants should have time until further order by the court to go upon the lands and remove the timber which had already been cut.

At a later date, complainants filed a petition, charging that defendants, their agents and employees, had violated this injunction by going upon the lands with shotguns and threats to kill, and disorganized and demoralized the work and prevented the removal of the timber. Another petition was filed later, alleging similar acts of disobedience, and stating that the defendants had been arrested and tried under the first injunction and found guilty of contempt of court, but upon their promise to cease interfering, no decree had been entered; that, notwithstanding this, they had con-

tinued these acts of interference, and a second attach-
ment was asked for, which was granted by the chancel-
lor.   On the hearing of this attachment, defendants
were found guilty of contempt of court, and a fine of
$50 was imposed on each of the three defendants, who
were also committed to the jail in Shelby county, there
to remain until such time as they should purge them-
selves of contempt, by causing their agents to be re-
moved from the premises so as not to interfere with the
further removal of the timber.

On the same day, a petition for writ of *habeas corpus*
was filed by defendants in the probate court of Shelby
county, attacking the jurisdiction of the chancery court
to adjudge defendants guilty of contempt, and seeking
their release.   The writ was issued and served, and
defendants in the chancery case were discharged. From
the order in the chancery case, the defendants ap-
pealed, and from the order in the probate court the
defendant T. G. Tate, sheriff, appealed.   So, as here-
tofore stated, the only question made in these causes
is whether the chancery court had jurisdiction to grant
the injunction.

It is conceded that the evidence is sufficient to justify
the court in proceeding to punish for contempt.

Counsel for the Thompsons take the position that the
court had no jurisdiction to enjoin the doing or re-
fraining from doing of things outside the State.   The
Thompsons rely very largely upon the opinion of the
court in *Telegraph Company* v. *Railway*, 8 Baxter, 54.
In that case injunction was refused on the ground that

the court could not enforce its decrees against agents of the defendant in the State of Georgia. The injunction required that the railway company permit the agents of the Western Union Telegraph Company to occupy and use the offices of the railway company in doing business. The right was claimed under a certain contract for the telegraph company to use the buildings and depots of the railway company in the sending of messages and the doing of other business, and it was charged that the railway company had failed to pay the telegraph company for messages received in accordance with the contract, the line of road running from Atlanta to Chattanooga. The suit was brought in Hamilton county, Tennessee. It was held that the injunction was proper so far as the company or its agents were within the State of Tennessee, and the chancellor was affirmed in his refusal to enjoin as to agents and property in the State of Georgia. It was held that the court would take jurisdiction to enforce a contract respecting lands lying beyond its jurisdiction when it has jurisdiction of the parties and can act *in personam* in the enforcement of its decrees, but that it will not take jurisdiction when full and complete relief cannot be granted and enforced without the exercise of authority over property situated in another State.

The principles stated in the case in 8 Baxter, cited above, are not at variance with the well-settled law upon the subject. Our courts in Tennessee have often held that an injunction may issue in chancery to com-

pel the specific performance of contracts or the execution of deeds respecting lands lying beyond the jurisdiction of the court.

In the noted case of *Penn* v. *Lord Baltimore*, 1 Vezey, 148, the chancellor of England decreed the specific performance of a contract respecting lands lying in North America. It was objected that the court could not enforce its decree *in rem*, but the chancellor gave no weight to the argument, saying that the strict primary decree of a court of equity is *in personam*, and may be enforced in all cases where the person is within its jurisdiction.

Chief Justice Marshall in *Massie* v. *Watts*, 6 Cranch, 148, 3 L. Ed., 181, after citing *Penn* v. *Lord Baltimore*, supra, *Arglosse* v. *Muschamp*, 1 Vernon, 75, *Earl of Kildare* v. *Sir Morrice Eustace and Fitzgerald*, 1 Vernon, 419, and *Toller* v. *Carteret*, 2 Vernon, 494, in all of which rights were enforced in England affecting real estate lying in other jurisdictions, said:

"Upon the authority of these cases, and of others which are to be found in the books, as well as upon general principles, this court is of opinion that, in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree. The inquiry, therefore, will be whether this be an unmixed question of title, or a case of fraud, trust, or contract."

There are many cases of high authority holding to this doctrine. For the purpose of illustration, it will

be sufficient to cite the following: *Watkins* v. *Holman,* 16 Peters, 25, 10 L. Ed., 873; *Watts* v. *Waddle,* 6 Peters, 389, 8 L. Ed., 437; *Pennoyer* v. *Neff,* 95 U. S., 723, 24 L. Ed., 565; *Burnley* v. *Stevenson,* 24 Ohio St., 478, 15 Am. Rep., 621; *Seixas* v. *King,* 39 La. Ann., 510, 2 South., 416; Works on Courts and Their Jurisdiction, pp. 32, 33; *Johnson* v. *Kimbro,* 3 Head, 557, 75 Am. Dec., 781; *Miller* v. *Birdsong,* 7 Baxt., 531; *W. U. Tel. Co.* v. *W. & A. R. R. Co.,* 8 Baxt., 54-61; *Kirklin* v. *Atlas Svgs. & Loan Ass'n* (Tenn. Ch. App.), 60 S. W., 149.

Where a suit is to try title or recover possession of land so that the process of the court in the enforcement of its decrees would have to act upon the property, the action is local and not transitory. The jurisdiction in such case is where the land is situated. Equity will not take jurisdiction where the court cannot grant complete relief, except by undertaking authority over property lying beyond its jurisdiction. If a court would be powerless to punish for contempt of its authority it will not enjoin.

It has also been frequently held that in actions for trespass or injury threatened or done to real estate where it directly affects the property itself, the action is purely local. *Miss. & Mo. R. R. Co.* v. *Ward,* 67 U. S., 485, 17 L. Ed., 311; *Nor. Ind. R. R. Co.* v. *Mich. Cent. R. R. Co.,* 56 U. S., 232, 14 L. Ed., 674; Salton Sea Cases, 172 Fed., 792, 97 C. C. A., 214; *Great Falls Mfg. Co.* v. *Worster,* 23 N. H., 462.

A case very closely in point was decided by the former court of chancery appeals of this State in an opinion delivered by Mr. Justice Wilson, which was confirmed orally by the supreme court. The parties to a suit in equity to restrain the defendant from interfering with the possession of certain real estate alleged to be owned by the complainants were before the court, and it was held that the court had power to grant the relief prayed for, although the land in question was situated in another State. *Kirklin* v. *Atlas Savings Association* (Tenn. Ch. App.), 60 S. W., 149.

This court had occasion to pass upon a question somewhat similar to that now before the court in the recent case of *Mattix* v. *Swepston*, 127 Tenn., 693, 155 S. W., 928, the opinion in that case being rendered by Mr. Justice Lansden. The plaintiffs had bought a boundry of timber in Crittenden county, Arkansas, from one Maudlin. The contract gave the plaintiffs five years in which to cut and remove the timber, and also granted them the right of way over adjacent lands of Maudlin for the purpose of hauling the timber when cut over Maudlin's lands to the railroad. The plaintiffs entered into possession of the land, and cut and removed the timber under their contract for about one year, when Maudlin leased the lands over which plaintiffs had acquired the right of way, to defendant Swepston. The latter obstructed the right of way over which plaintiffs had an easement, and by threats of violence maintained the obstruction and prevented plaintiffs from using the right of way, as a result of

Anderson-Tully Co. v. Thompson.

which they were unable to cut and remove the timber, and for this injury they sued in an action of damages. The question in the case was as to whether the action was transitory and could be maintained in this State, where the defendant was found. It was held that the plaintiffs' right to use the way was in privity of contract with the owner, and not in privity of estate or title; that it was merely appurtenant to the right to cut and remove the timber; and that the cause of action did not consist alone of the defendant's wrongful conduct concerning the real estate, but embraced plaintiffs' right under the contract which was destroyed by the defendant's misconduct. It was held that this was very different from a case of injury to real estate, and that damages could be recovered on the ground that defendant by personal act had injured plaintiff's business.

The complaint is not of anything affecting the real estate in such way as that the process of the court would have to operate upon the property, but the acts here complained of are so far personal in their nature that the mere ceasing of personal action or the withdrawal of the person from the property or rights of way will effect the remedy. The defendants are personally before the court, and the court may direct their personal movements, even though such movements in a way affect rights growing out of real estate. When a court directs that a deed be executed conveying real estate by a party before the court, it will operate even to the extent of changing the title to the land. Nev-

ertheless, the action of the party is one of a personal nature. The court will compel this personal act because it has jurisdiction of the person and can direct his movements. There is no difference in principle in directing that these defendants cease from interference by threats of intimidation and obstruction of rights of way, to those well-recognized acts affecting real estate which may be directed by the courts.

As hereinbefore pointed out, these defendants had the control of their agents and could say to them, "You must cease from interference with the complainants' right to remove this timber," and it would be done. In fact, without their instruction, none of the acts complained of would have been done. When the defendants cease activity and direct that persons under their control likewise desist from interference with complainants' rights, there will be nothing left to prevent their removing the timber.

The acts of interference complained of were fraudulent in their nature, being in violation of contract rights existing between the parties, and alleged to have been committed for the purpose of preventing the removal of timber until the time expired, under the contract, so it would then become the property of defendants. If, therefore, the question be determined by the rule laid down by Chief Justice Marshall, as we think it fairly may, "whether this be an unmixed question of title or a case of fraud, trust, or contract," we conclude at once that it does not involve title, but is clearly a case of personal rights under contract, involv-

Anderson-Tully Co. v. Thompson.

ing fraud of the parties. It was clearly within the duty and power of the chancery court to grant the injunction.

The probate court committed a grave error in undertaking to review and prevent the chancery court's authority in the punishment of willful offenders, guilty of repeated violations of its injunction, under the circumstances.

The court of civil appeals was correct in affirming the action of the chancellor and reversing the order of the probate court. The writ of *certiorari* is therefore denied.