TULLAHOMA CONCRETE PIPE COMPANY, Inc., Plaintiff-in-Error, v. T. E. GILLESPIE CONSTRUC-TION COMPANY and United States Fidelity and Guaranty Company, Defendants-in-Error.—
405 S.W.(2d) 657.

Middle Section, at Nashville. February 25, 1966.

Certiorari Denied by Supreme Court August 16, 1966.

Henry, McCord & Forrester, Tullahoma, for plaintiff in error.

Sam B. Gilreath, Lebanon, for defendant in error T. E. Gillespie Const. Co.

James I. Vance Berry, Nashville, Granville S. R. Bouldin, Murfreesboro, for defendant in error United States Fidelity & Guaranty Co.

PURYEAR, J. For the sake of convenience we will, as counsel have done, refer to the parties herein as they were designated in the trial court, to-wit, Tullahoma Concrete Pipe Company, Inc., as complainant, and to each defendant simply as "defendant." There being several defendants, we will refer to the defendant, T. E. Gillespie individually and d/b/a Gillespie Construction Company, as "Gillespie" and the defendant, United States Fidelity and Guaranty Company, as "surety." We will refer to the third defendant, Ogles-Comer Company, Inc., as "Ogles-Comer".

The facts of the case are briefly as follows:

The State of Tennessee awarded a highway construction contract in Wilson County to the defendant, Gillespie, as principal contractor. The project is known as Tennessee Highway Project No. F-024-1-(2), Wilson County, Tennessee, and is referred to as the Lebanon By-Pass. Presumably, Gillespie furnished the statutory bonds required by law for a general contractor on a highway project, but the record is silent on this question with the exception of an allegation to that effect in the original bill and a denial of such allegation in the answers of the defendants.

Gillespie sub-contracted a portion of the work to Ogles-Comer, and in turn, Gillespie called on Ogles-Comer, in connection with the sub-contract, to execute in his favor performance and payment bonds guaranteeing Ogles-Comer's performance of the sub-contract and the payment for labor and materials required by it in the performance of the sub-contract.

United States Fidelity and Guaranty Company executed these bonds, as surety, with Ogles-Comer as principal, and a copy of the sub-contract labor and materials bond is filed as an exhibit to its answer.

The original bill alleges, and complainant seeks to support this allegation by some proof, that complainant furnished concrete pipe for its use in the performance of its sub-contract and that there is a balance due complainant on this account of $27,898.39. Objections were filed to certain portions of this evidence offered by complainant and these objections were followed by a motion to strike the portions of such testimony, to which objections were made. (Tr. p. 113). This motion to strike was overruled by the Chancellor. (Tr. p. 118). However, the objections were later sustained and the Chancellor held that the proof fails to establish that the materials in question were consumed in the work or necessarily so intended to be consumed.

It is conceded by counsel for all of the parties that Ogles-Comer abandoned and left the job in September, 1962. In order to protect itself on the performance bond, the surety then obtained another contractor to finish that portion of the project which had been sub-contracted by Ogles-Comer.

This suit was filed more than twelve months after Ogles-Comer discontinued its work on the project in

question. The sub-contract labor and materials bond (Tr. p. 19) provides, among other things, that no suit or action shall be commenced thereunder after the expiration of one year following the date on which the principal (Ogles-Comer) ceased work on said contract. The surety contends that this suit is barred by the foregoing provision of the bond.

During the month of August, 1962, Ogles-Comer executed a note to complainant for the amount which complainant contended Ogles-Comer owed it for materials furnished, but this note has not been filed as an exhibit in this case.

This note was later negotiated to a bank and was being held by such bank at the time this suit was filed. The bank was not made a party to this suit and the name of such bank does not appear in the record.

After the surety filed its answer to the original bill, complainant filed an amended and supplemental bill (Tr. pp. 24-29) alleging, among other things, that the surety offered to settle complainant's claim for the sum of $25,000.00, that the complainant accepted this offer before it was withdrawn and that this alleged offer and acceptance ripened into a contract with the surety.

This amended and supplemental bill also alleges that the surety assumed the role of a sub-contractor and took over the work of its principal, Ogles-Comer, including the materials delivered by complainant, and that the surety used such materials in the completion of the work and received the benefit thereof.

To this amended and supplemental bill, the surety filed an answer denying the alleged offer of settlement and

acceptance thereof, and further denying that it had enriched itself by the use of complainant's materials by taking over the subcontract and completing it.

Gillespie filed an answer to the original, amended and supplemental bills, which neither admitted nor denied the alleged offer of settlement and the other allegations thereof regarding the surety's taking over the performance of the subcontract, but specifically denying liability to complainant for any amount.

In this answer, Gillespie also incorporated a cross-bill praying that if complainant be awarded a recovery against him that he, in turn, be awarded a recovery against Ogles-Comer and the surety. To this cross-bill, the surety filed its answer, reiterating its denial of liability.

The case was tried by the Chancellor on depositions and documentary evidence, as a result of which the Chancellor entered a decree dismissing the original, amended and supplemental bills against Gillespie and the surety and awarding a recovery in favor of complainant against Ogles-Comer in the sum of $27,898.39, and also dismissing the cross-bill of the defendant, Gillespie, which decree is in words and figures as follows:

"This cause came on to be heard on this 27 day of April, 1965, before the Honorable John D. Templeton, Chancellor, upon the original and amended and supplemental bill of complainant, Tullahoma Concrete Pipe Company, Inc., the answers thereto, the cross bill of the cross complainant, Gillespie, the answer and pro confesso thereto, the depositions on file, motion of defendant, United States Fidelity & Guaranty Company to strike certain testimony contained in the depo-

sition of Jerry Garner, taken on June 14, 1964 and filed in this cause on August 24, 1964, upon the arguments and briefs of counsel and upon the entire record in this cause, including particularly a memorandum of the Court filed February 23, 1965, which is hereby ordered made a part of the record in this cause. For the reasons stated in the memorandum of the Court, it is ordered, adjudged and decreed that defendant, United States Fidelity & Guaranty Company's objections noted on the deposition and its motion to strike certain testimony of Jerry Garner filed in this cause on August 24, 1964, is sustained, to which action of the Court in sustaining defendant's objections and motion to strike the complainant, Tullahoma Concrete Pipe Company, Inc., duly and timely excepted and now excepts.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that complainant's bill be and the same hereby is dismissed as to the defendants, T. E. Gillespie, individually and d/b/a T. E. Gillespie Construction Company and United States Fidelity & Guaranty Company and by reason thereof, the cross bill of the complainant, T. E. Gillespie d/b/a T. E. Gillespie Construction Company is likewise dismissed.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the complainant, Tullahoma Concrete Pipe Company, Inc., have and recover of the defendant, Ogles-Comer & Co., Inc. the sum of Twenty Seven Thousand Eight Hundred Ninety Eight and 39/100 ($27,898.39) Dollars, together with interest thereon from and after August 18, 1962, together with all costs of this cause for which execution will issue if necessary.

To the action of the Court in dismissing its bill as to the defendants, T. E. Gillespie, individually and d/b/a T. E. Gillespie Construction Company and United States Fidelity & Guaranty Company, and to all adverse holdings and rulings of the Court, the complainant, Tullahoma Concrete Pipe Company, Inc., duly and timely excepted and now excepts and prays an appeal to the Court of Appeals of Tennessee, Middle Section sitting at Nashville, which appeal is granted upon the complainant filing its appeal bond or otherwise perfecting its appeal within thirty (30) days from the entry of this order. Upon application of the complainant, the complainant is allowed sixty (60) days within which to prepare and file its bill of exceptions.

ENTER: John D. Templeton
Chancellor.''

(Tr. pp. 127-128)

From the foregoing decree, the complainant has prayed and perfected its appeal to this Court and filed assignments of error as follows:

## ASSIGNMENTS OF ERROR

### I

''The Chancellor erred in holding that the complainant's case against the contractor and the contractor's surety must fall down for lack of evidence.

### II

The Chancellor erred in sustaining the objections of the surety for the contractor and sub-contractor regarding complainant's vice-president and manager's testi-

mony that the materials furnished by complainant were consumed or intended to be consumed in the 'Wilson County' project.

## III

The Chancellor erred in dismissing complainant's suit against the contractor and holding that there was no way to make any adjudication on the contractor's bond since same was not introduced into evidence.

## IV

The Chancellor erred in holding that suit must be commenced within one year from the time the sub-contractor ceased work and erred in failing to hold that defendant surety waived the one year provision of the surety agreement because of the surety's course of conduct in dealing with complainant before and after the expiration of the one year period.

## V

The Chancellor erred in not holding that the surety for the sub-contractor was estopped from asserting the one-year provisions for the bringing of suit since the delay in bringing suit was caused by said surety's course of conduct in dealing with complainant.

## VI

The Chancellor erred in not holding that the offer of settlement for $25,000.00 made by the surety on October 3, 1965, to complainant's solicitor ripened into a contract when said solicitor accepted this offer on February 20, 1964.

## VII

The Chancellor erred in holding that the surety had the right to regard its offer of settlement as lapsed before acceptance.

## VIII

The Chancellor erred in not holding that the surety for the contractor and the sub-contractor was unjustly enriched by using complainant's materials in completion of the sub-contractor's contract.

## IX

The Chancellor erred in adjudicating a forfeiture when the record shows that complainant promptly complied with all of the surety's requests; that the more than one-year delay was caused by the surety; that the surety was not prejudiced in any way by any action on the part of complainant and that the surety had been unjustly enriched at complainant's expense by the Chancellor's decision.

## X

The Chancellor erred in holding time of the essence in bringing suit on the surety contract with the sub-contractor thus working a forfeiture of substantial rights of complainant.''

Gillespie and the surety prosecute writs of error in this Court, but since the Chancellor did not award any recovery against either of these two defendants and dismissed the bill as to them and we have concluded the Chancellor reached the correct result, it is not necessary for us to consider the assignments of error filed by these

defendants. Ogles-Comer did not appeal and does not prosecute any writ of error in this Court.

We will consider assignments of error one and two together. These two assignments relate to the admissibility of certain evidence introduced by complainant and, in our opinion, raise the most important question involved in this case. The only witness who testified regarding alleged transactions between complainant and Ogles-Comer was complainant's vice-president and general manager, Mr. Jerry Garner.

Complainant introduced as exhibits to Mr. Garner's deposition forty-five delivery tickets purporting to show delivery of concrete pipe to Ogles-Comer on the project in question, to which evidence defendants duly excepted. Defendants also excepted to other testimony of Mr. Garner to the effect that the concrete pipe in question was delivered to Ogles-Comer at the job site, upon the grounds that such testimony was based upon hearsay and the facts about which he purported to testify were beyond his personal knowledge. In his memorandum opinion, the Chancellor held as follows:

"However, the case against the contractor and the surety must fall down for lack of evidence. It is a rule that in order to have the benefit of these statutes the furnisher must show what the material was consumed in the work or intended to be so consumed. Southern Const. Co. v. Halliburton, 149 Tenn. 319, 335, [258 S.W. 409]. Mr. Garner undertook to prove this but all of his testimony on the subject was objected to and the objection must be sustained. He was not able to testify to the necessary facts of his own knowledge. It appears also that the contractor's bond never was introduced

into evidence so there would be no way to make any adjudication on it." (Tr. p. 122)

Thus, it will be seen, the Chancellor sustained the objections to the vital portions of Mr. Garner's testimony by which complainant attempted to prove that the concrete pipe in question was consumed in the work or so intended to be consumed.

Complainant insists that the delivery tickets are records which are admissible under the Uniform Business Records as Evidence Act, which is codified as Section 24-714, Tennessee Code Annotated, as follows:

"24-714. *Records as evidence.*—A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness, testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

This code section is part of Chapter 154 of the Acts of 1957, and at the date of the writing of this opinion, similar or identical statutes have been enacted in at least twenty-four other States.

We find very few cases in Tennessee in which this statute has been construed and do not find any case in this State in which the precise question in the instant case has been decided.

However, since the statute is a uniform law, we have sought the benefit of other text books in which these laws are discussed and find a very enlightening treatise in C.J.S., a portion of which we quote as follows:

"Under the provisions of the Uniform Business Records As Evidence Act and similar statutes regulating the admissibility of business documents, a record of an act, condition, or event is competent evidence *if the custodian or other qualified witness testifies to its identity and the mode of its preparation, if it was made in the regular course of business, at or near the time of the act, condition, or event, and if in the opinion of the court, the sources of information, and the method and time of preparation were such as to justify its admission.* Not every writing is admissible simply because it was made or rendered in the conduct of some business, and compliance with all the qualifications of the statute is a prerequisite to admissibility. It is not the design of such statutes to make all business and professional records admissible as competent or relevant regardless of the purpose for which, or the manner in which, such records are made, and the mere fact that a document or record is generally admissible under the statute does not mean that any and everything contained in the writing is necessarily admissible in any given case.

*Such statutes allow the court to exercise discretion as to whether record evidence shall be admitted in the trial, and under their terms, it may reject the evidence if, in its opinion, the sources of information and the methods and time of preparation of the document do not establish the document as trustworthy.* While under a provision of such a statute, the various circumstances of the making of the record affect its weight and not its admissibility, such provision has been held to come into play only in case other requirements of the statute are met."

32 C.J.S. Evidence sec. 682(2), pp. 897, 898, 899. (Italics added)

Also see citations under footnote 5, pp. 509-510 of Vol. 9A Uniform Laws Annotated.

 Thus, it will be seen that the trial court is vested with much discretion in determining the admissibility of business records under the foregoing statute. The evidence in this case does not show that Mr. Garner was the custodian of these delivery tickets and, therefore, it fell within the discretion of the Chancellor to determine whether or not he could qualify as "other qualified witness" under the terms and provisions of the statute.

Also, under the provisions of the statute and the foregoing citation from C.J.S., it appears that the Chancellor could, in his discretion, determine whether or not "the sources of information, method and time of preparation" justified the admissions of such records.

Apparently, the Chancellor determined that the proper foundation had not been laid for the introduction of these delivery tickets as business records. Mr. Garner testified that the truck drivers, who made the deliveries of the material described on these tickets were still employed by complainant at the time his deposition was taken, yet Mr. Garner was the only officer or employee of complainant, who was called to testify and no reason is shown why the truck drivers or other employees did not testify.

The fact that Mr. Garner said he saw the pipe on the job site is not significant, since this is a suit on an open account, and his cross-examination reveals that his testimony as to measurements and quantity of pipe was based entirely upon hearsay, which was properly excluded by the Chancellor.

Therefore, we think the Chancellor properly held that Mr. Garner's testimony concerning the delivery of the concrete pipe was not competent and that the case against the principal contractor and the surety must fall for lack of evidence, citing Southern Construction Co. v. Halliburton, 149 Tenn. 319, 335, 258 S.W. 409, which is applicable to the instant case.

■ In assignment of error number three, complainant insists that the Chancellor erred in holding there was no way to make any adjudication on the contractor's bond since it was not introduced into evidence, and we think the Chancellor correctly held that he could not make any adjudication on it, since the bond was not introduced in evidence.

■■ In assignments of error numbered four, five and ten complainant insists the Chancellor erroneously applied the provision in the sub-contractor's bond that suit must be brought within one year after the sub-contractor ceased work on the project, specifically insisting that this provision was waived by the surety.

We do not find anything in the correspondence between the surety and complainant's representatives, or in negotiations between them, to indicate that the surety intended to waive this provision.

It is well settled that such a limitation in the bond is valid. This Court so held in J. R. Hale & Sons v. R. C. Stone Eng. Co., 14 Tenn.App. 461. Our Supreme Court held to the same effect in Guthrie v. Connecticut Indemnity Assoc., 101 Tenn. 643, at page 646, 49 S.W. 829. Therefore, we find no merit in these assignments of error.

■■ In assignments of error numbered six and seven, counsel insists that an alleged offer of $25,000.00 was

made by the surety's counsel, which was accepted by complainant's counsel and that this offer then ripened into a contract.

The record shows that the conversations in which complainant's counsel contends surety's counsel offered to settle for $25,000.00 occurred on October 3, 1963, and that the conversation in which complainant's counsel accepted the offer to settle was some four and one-half months later, to-wit, February 20, 1964.

The Chancellor held that more than a reasonable time had elapsed between the date of the alleged offer and the date of acceptance, and, therefore, the surety was not bound thereby. We concur in this conclusion of the Chancellor. If any such offer of settlement was made, there was no time limit on it and, therefore, in such a situation, the law considers that the alleged offer remained open for a reasonable time. 17 Am.Jur. (2nd) Contracts, Sec. 35; 17 C.J.S. Contracts, sec. 51.

Counsel for the surety insists that more than a reasonable time elapsed between the making of the alleged offer and the acceptance thereof, and also that a counter-offer was made, which was, in effect, a rejection of the alleged offer of settlement. Mr. John McCord, of counsel for complainant, testified concerning the alleged offer and acceptance thereof, and we quote the pertinent portion of his testimony regarding the alleged acceptance as follows:

"Q. When you talked to Mr. Caldwell on February 20, you testified that you did accept the offer. Now, do you recall your exact words at that time? Tell us about the conversation?

A. Well, I just called him and told him, of course, I attempted to dicker with him at first to get full payment on it. I saw that he was not going to increase it or didn't seem to be so I told him I had the authority of my clients to accept the $25,000.00 offer and did accept it.

Q. You say you at first attempted to dicker to get full payment?

A. Yes, sir.

Q. Now, what did you say at first in that connection?

A. I don't know the words I used but I think I started out offering to discount the interest and attorneys' fees.

Q. So you in effect first made a counter-offer to waive interest and attorneys' fees?

A. We discussed that, yes, sir.

Q. He advised you he would not do that?

A. He didn't accept it or I would have taken him up on it.

Q. You then said you would go back to his original offer and settle for $25,000.00?

A. Yes, sir.

Q. And he rejected that?

A. He said the complexion may have changed and he would have to see about it. And I said I would go ahead and file suit on it.'' (Tr. p. 103)

■ In Ray v. Thomas, 191 Tenn. 195, 232 S.W.2d 32, our Supreme Court held that acceptance of an offer must exactly and precisely accord with the terms of the offer.

In the early case of Canton Cotton Mills v. Bowman Overall Co., 149 Tenn. 18, 257 S.W. 398, our Supreme Court quoted from Corpus Juris and Ruling Case Law as follows:

"The controlling rule of law is elementary, but it is well stated in 13 Corpus Juris, 281, as follows:

'An acceptance, to be effectual, must be identical with the offer and unconditional. Where a person offers to do a definite thing, and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat, or it is a counter proposal, and in neither case is there an agreement.' Again in 6 R.C.L., 608, it is said: 'In order that there may be a meeting of the minds which is essential to the formation of a contract, the acceptance of the offer must be substantially as made. There must be no variance between the acceptance and the offer. Accordingly a proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation unless the party who made the original offer renews it, or assents to the modification suggested.'

And to the same effect is 1 Williston on Contracts, p. 57. These text-book statements of the rule are well supported by the authorities cited, and, applying this rule to the facts of this case, it must be held that the contracts sued on were not finally consummated."

Canton Cotton Mills v. Overall Co., supra, page 31, 257 S.W. page 402.

Therefore, we do not find any merit in these assignments of error.

██ In the remaining assignments of error numbered eight and nine, complainant insists that the defendant surety was unjustly enriched by using complainant's materials in finishing the job which had been abandoned by Ogles-Comer. We do not find any merit in these assignments of error, since the evidence does not show that any of the complainant's materials were used by the surety. In taking over the contract of Ogles-Comer and allowing work to be done by another contractor, the surety was simply protecting itself, as it was entitled to do, under its performance bond and did not thereby assume any obligation to the complainant.

Finding no merit in the assignments of error filed by complainant, such assignments are overruled and the decree of the Chancellor is affirmed. The costs of this appeal will be borne equally by the parties, that is to say, the complainant and the defendants, Gillespie and the surety, will each pay one-third of such costs.

Shriver and Humphreys, JJ., concur.