James R. MARTIN, Trustee,
Plaintiff–Appellee

v.

Robert R. MARTIN, and wife, Barbara
Martin, Defendants–Appellants.

Court of Appeals of Tennessee,
Eastern Section.

Jan. 14, 1988.

Permission to Appeal Denied by
Supreme Court April 25, 1988.

Wayne R. Houser, Jr. and James R. Moore, Knoxville, for plaintiff-appellee.

Brandt W. Davis, Knoxville, for defendants-appellants.

## OPINION

SANDERS, Presiding Judge, Eastern Section.

The Defendants have appealed from a chancery decree awarding judgment for the unpaid balance of a promissory note, which Plaintiff says was marked "paid" by inadvertence or mistake, but which Defendants say they paid in full.

In March 1980 the Defendants–Appellants Robert R. Martin and wife, Barbara K. Martin, executed a negotiable promissory note to Southern Industrial Banking Corporation [SIBC] for the principal sum of $122,562.21. The note was payable at the rate of $1,048.00 per month. The note was secured by a Deed of Trust on real estate located in Roane County. Monthly payments were made on the note until September 1982 when the note was marked "Paid 9–10–82" and a release for the Deed of Trust was executed and recorded by SIBC. The note and release were then sent to the Defendants.

The Plaintiff–Appellee James R. Martin, as Trustee in Bankruptcy for the Estate of C.H. Butcher, Jr., filed suit in the Chancery Court of Knox County alleging that by assignment he was the holder of the note or indebtedness. Through mistake the note had been marked paid and a release of the Deed of Trust had likewise been executed and recorded without the indebtedness having been paid in full. The unpaid portion of the indebtedness was $93,866.21 plus accrued interest. He asked for judgment of the unpaid balance of the note plus interest and attorneys fees. He also asked the Court to declare the release void on the grounds of mistake. The Defendants for answer denied the note had been marked paid through mistake or the release had

been executed by mistake, but said they had paid the note in full.

Defendants testified the note was paid in cash on September 10, 1982, to SIBC at the West Knoxville branch office. Robert Martin testified he borrowed $59,000 from four individuals in order to pay off the note. However, he did not know the amount of money he paid to SIBC. The four individuals from whom Mr. Martin testified he borrowed the money all testified the Defendant borrowed money from them during June through August of 1982. There was, however, no written record of the transactions between them and the Defendant.

In pretrial discovery depositions the Defendants testified they had not made any payments on the note after September 10. However, upon the trial of the case they admitted they had altered several checks to support their claim of no further payments. The proof at trial showed six monthly payments had been made on the note by the Defendants after they had supposedly paid it.

Plaintiff testified the payment was not made; the note was marked paid in full and the release was executed by SIBC through mistake in a new computer system. A number of SIBC employees testified they received no cash payment from the Defendant on September 10. Plaintiff also presented the records of SIBC for the cash receipts for September 10, which showed no such amount of cash was received that day.

The testimony was unclear exactly when SIBC discovered the error; it was, however, prior to November 9. When the discovery was made, SIBC called the Defendant several times to come in to the office and re-execute the note. A collector for the bank testified the mistake was discovered when the Defendants failed to make their payments. He said he called the Defendant and Defendant told him he had received the note marked "Paid in Full" and he expressed some concern as he had not in fact paid the note. Mr. Travis testified he called Mr. Martin after the error was discovered and Mr. Martin said, "I was wondering why I got my Deed of Trust and

my note." He said Mr. Martin acknowledged he had not paid the note and agreed to return the note to the bank. After this conversation the additional payments were made on the note.

Plaintiff introduced copies of a master loan agreement under which C.H. Butcher, Jr. [Butcher], was to purchase and SIBC was to sell certain promissory notes and copies of the assignments of those notes. The specific loans were not listed.

· The Plaintiff testified SIBC sold the note to Butcher, who in turn sold the note to C & C Bank of Union County [C & C]. C & C, under a settlement agreement, in the bankruptcy proceedings of Butcher reassigned the note to the Plaintiff James R. Martin, as Trustee of the bankrupt Butcher estate.

At trial the Chancellor found the issues in favor of the Plaintiff. She found the Plaintiff had standing to sue on the note, the Defendants had never paid off the note, and the marking of the note paid in full and the release of the collateral were a mistake. She also ruled the Roane County trust deed was valid although it had been released of record and never re-executed by the Defendants.

The Defendants have appealed and present four issues for review by this court.

Does Appellee, as Trustee for the bankrupt estate of C.H. Butcher, Jr., have any standing as the holder of the negotiable instrument at issue, a promissory note payable to the order of SIBC, to sue on that note, and did Appellee, ever obtain such rights by valid assignment of the note or otherwise?

Did the Chancellor err in admitting, over objection of Appellants, various copies of pertinent records and documents instead of the originals, including loan history cards, SIBC business records, purported contracts and assignments of the note at issue, in addition to copies of other documents, to establish Appellee as a holder of the note and to prove Appellants did not pay off the note?

Did the Chancellor err in making findings of fact and conclusions of law as to the validity of the re-recording of the trust deed securing the note at issue, when this realty was located in Roane, County, Tennessee and all recordings were in the office of the register of deeds for Roane County? Further, did the Chancellor have jurisdiction to make such findings and determine this re-recorded trust deed, having once been validly released of record, presently constitutes a valid lien on this Roane County property thereby subjecting it to foreclosure?

Did Appellee establish by a preponderance of the evidence his standing as holder of the note, mistake and non-payment of the note by Appellants?

Appellants assert the Appellee, as Trustee for the bankrupt estate of C.H. Butcher, Jr., has no standing to sue on the promissory note at issue here.

T.C.A. § 47–3–201 provides that in any transfer for value of an instrument not then payable to bearer, the transferee must obtain the endorsement of the transferor in order to acquire the status of a holder. If it is not obtained then negotiation does not occur and there is no presumption the transferee is the owner of the instrument. *See Commerce Union Bank v. Welch,* 29 B.R. 819 (Bankr.M.D.Tenn.1982). Comment 1 to T.C.A. § 47–3–201 states "Any person who transfers an instrument transfers whatever rights he has in it. The transferee acquires those rights even though they do not amount to 'title'." Since SIBC had surrendered possession of the note to the Defendants there was no note to transfer, and negotiation could not occur. Since negotiation did not occur, Appellee is not a holder of the promissory note. The Appellee rather received an assignment of a cause of action on the underlying obligation of Appellants to SIBC.

In *First National Bank v. Yowell,* (2 Smith) 155 Tenn. 430, 294 S.W. 1101 (1927) the court found that if "the cancellation [of the note], by stamping "paid" thereon, for example, is made under a mistake, it is inoperative to discharge either the debt or the instrument." *Id.,* at 439, 294 S.W. 1101. *See also, Carter County Bank v.*

*Craft Industries, Inc.,* 639 S.W.2d 661 (Tenn.App.1982).

 Since Appellee is not a holder, nor a holder in due course, there is no presumption of ownership in his favor under the U.C.C. The Appellee must prove his case; he must establish the terms of the instrument, his ownership of the underlying obligation, and must account for his lack of possession of the note. Other than the Defendants' assertions that the Plaintiff had no standing to sue on the note, the undisputed proof is the Plaintiff is the owner of the underlying obligation upon which the note was based.

The Chancellor in addressing this issue in her memorandum opinion said:

Defendant contends that unless Plaintiff presents credible proof that there was delivery, transfer, and endorsement of the note from S.I.B.C. to C.H. Butcher, Jr., that the Plaintiff has no standing to sue.

Even if Defendant is correct in his contention that that is the law, Plaintiff introduced testimony at trial that all parties who might have an interest in this note have agreed as to the ownership of the Plaintiff in the note. The actual parties themselves, the Southern Industrial Banking Corporation liquidating trustee and the president of Union County Bank, at the time in question, appeared before the Court and testified that they had investigated the matter and that they believe James R. Martin, trustee for the bankruptcy estate of C.H. Butcher, Jr., was the proper party to bring this cause of action.

No other parties with a possible interest laying claim to the note, it is therefore found that James R. Martin has standing to bring this action upon the note.

We concur.

Appellants assert the Chancellor erred in admitting various copies of documents and business records to establish Appellee was a holder of the note and to prove Appellants did not pay off the note.

 T.C.A. § 24–7–110, The Uniform Photographic Copies of Business and Public Records as Evidence Act, provides copies of original documents or records kept in the ordinary course of business may be admitted as originals.

 T.C.A. § 24–7–111, The Uniform Business Records as Evidence Act, requires a custodian or other qualified witness testify to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act. Because of the demise of the Butcher banking empire, SIBC no longer exists. Its records and personnel have been scattered. Appellee is presently the custodian of the Appellant's loan file. Its chain of possession and title were traced and authenticated by various witnesses back to the time of SIBC's possession. Various SIBC ex-employees testified as to the authenticity and/or preparation of the SIBC records at the time of the occurrence. Many auditors have examined the books and business records of SIBC. Mr. Thomas E. Duvoisin, the Trustee in Bankruptcy for SIBC, testified as to the authenticity of its records. At trial he testified as follows:

Q. All right. One last question. To whom have you talked and what efforts have you made to determine if, in fact, these are the true and correct records of that day?

A. Well, I think, I think Mr. Deutscher, who was the Bankruptcy Trustee, the employees of SIBC, and the employees of the Trustee that transferred over, became employees of the trust under my administration. I think probably best to respond is that there is, nothing has ever come to my attention that would indicate that these were not the records of SIBC.

. . . .

Q. Have you ever looked at any other records or earlier in the month of September 1982—

A. Oh, we have looked at—we have looked at, you know, in the course of what we are involved in there. We have examined reams, and reams, and reams of records of SIBC, not just for this specific date. We are involved in over 1,000 lawsuits that require audits and reviews of records.

I guess, you know, to help in that situation, two national accounting firms have audited SIBC since my involvement and nothing has turned up by either one of those firms. That would indicate that these were not genuine records of SIBC, and they have in the past, and will testify in the future, as to certain financial conditions of SIBC and they relied on these, some of these same documents and records that we have relied on here.

The court in *Van Zandt v. State*, 218 Tenn. 187, 402 S.W.2d 130 (1966), *cert. denied*, 385 U.S. 884, 87 S.Ct. 175, 17 L.Ed.2d 111 (1966), quoted with approval from *Cantrill v. American Mail Line, Inc.*, 42 Wash.2d 590, 257 P.2d 179 (1953) as follows:

> The ruling of the trial judge admitting or excluding such records is given much weight and will not be reversed unless there has been a manifest abuse of discretion.

*Van Zandt*, 402 S.W.2d at 137. *See also Tullahoma Concrete Pipe Co. v. T.E. Gillespie Construction Co.*, 56 Tenn.App. 208, 405 S.W.2d 657 (1966).

The Plaintiff is the present custodian of various records of SIBC. Mr. Thomas E. Duvoisin, the Trustee in Bankruptcy for SIBC, is also the present custodian of other records of SIBC. Both testified to the best of their knowledge the records were authentic. Under the facts of this case we do not feel the trial court abused its discretion in admitting the records.

Appellants assert that since the trust deed for the Roane County property, which secured the promissory note, was filed and released in Roane County, the Chancellor did not have jurisdiction to determine the validity of the trust deed.

They argue venue in real property matters is determined by statute, is jurisdictional and cite T.C.A. § 16–11–114(2) in support thereof.

> Venue of suits.—The local jurisdiction of the court of chancery is also subject to the following rules:
>
> . . . .
>
> (2) All bills filed in any court seeking to divest or clear the title to land, or to enforce the specific execution of contracts relating to realty, or to foreclose a mortgage or deed of trust by a sale of personal property or realty, shall be filed in the county in which the land, or a material part of it, lies, or in which the deed or mortgage is registered.

In *Tinsly v. Bryan*, (21 Thompson), 148 Tenn. 256, 260, 255 S.W. 49 (1922), the court said:

> The term "original jurisdiction" of cases of an equitable nature evidently refers to that class of cases where the right of action itself is of an equitable nature, and not to those cases where the remedy is of such a nature as that a court of chancery only can apply.

*Tinsly*, 148 Tenn. at 261, 255 S.W. 49.

■ The court in *Anderson–Tully Co. v. Thompson*, 132 Tenn. 80, 86 (1915), quoted with approval from *Massie v. Watts*, 6 Cranch 148, 10 U.S. 148, 3 L.Ed. 181 as follows: "[I]n a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree." If the suit was properly instituted, T.C.A. § 16–11–205 gives the chancery court power to issue to other counties attachments, injunction, and all other process known to the court, and necessary to attain the ends of justice. When Chancery court takes jurisdiction for one purpose it will take jurisdiction for all purposes incidental to the jurisdiction of the main subject. *See Tucker v. Simmons*, 199 Tenn. 359, 287 S.W.2d 19 (1956).

■ In the case at bar, the court had jurisdiction over the Defendants; the suit was not for foreclosure upon the property, nor to divest or clear the title to land, nor to enforce the specific execution of contracts relating to realty. Rather it was to correct a mistake, a subject over which the Chancery Court has inherent jurisdiction, even when it affects title to land in other counties. *See Anderson–Tully Co. v. Thompson*, 132 Tenn. 80, 86 (1915).

■ The Appellants assert the Appellee did not establish by a preponderance of the evidence his standing as a holder of the note, nor mistake and non-payment of the note.

Review by this court of the findings of fact by the trial court is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. T.R.A.P. 13(d). This case basically turns upon questions of fact, and the Chancellor is the judge of the credibility of the witnesses. The Chancellor, who hears the witnesses, is the best judge of credibility and her findings on factual issues will not be disturbed if there is material evidence to support them. *Bingham v. Dyersburg Fabrics Co., Inc.*, 567 S.W.2d 169 (Tenn.1978). After review of the extensive record in this case we find the preponderance of the evidence to be overwhelmingly in favor of the findings of the Chancellor.

The issues are found in favor of the Appellee. The decree of the Chancellor is affirm. Costs are taxed to the Appellants. The case is remanded for the collection of costs.

FRANKS and ANDERSON, JJ., concur.