CITY BANK & TRUST COMPANY and )
B. TIMOTHY PIRTLE, Trustee, )
                                )
     Plaintiffs/Appellees, )     Appeal No.
                                )     01-A-01-9605-CH-00198
v. )
                                )     Warren Chancery
DAVE ALLEN WEBB and )     No. 5991
DEBBIE LYNN WEBB, )
                                )
     Defendants/Appellants. )

FILED

February 5, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE CHANCERY COURT FOR WARREN COUNTY

AT McMINNVILLE, TENNESSEE

THE HONORABLE JOHN W. ROLLINS, CHANCELLOR

TIMOTHY L. REED
Suite 302, City Bank Building
McMinnville, Tennessee 37110
     ATTORNEY FOR PLAINTIFFS/APPELLEES

KEITH S. SMARTT
107 College Street
P. O. Box 869-B
McMinnville, Tennessee 37110
     ATTORNEY FOR DEFENDANTS/APPELLANTS

AFFIRMED AND REMANDED

SAMUEL L. LEWIS, JUDGE

# Oᴘɪɴɪᴏɴ

This is an appeal by defendants Dave Allen Webb and wife Debbie Lynn Webb, from the trial court's judgment setting aside a foreclosure sale and, in effect, putting the parties in the same position they were in before the foreclosure.

We find that the facts, as found by the trial court, are supported by a preponderance of the evidence and they are as follows:

Defendants were in default on a promissory note payable to Plaintiff bank, secured by a deed of trust describing three parcels of real estate. When negotiation failed, and foreclosure was imminent, B. Timothy Pirtle, Trustee named in the Deed of Trust and attorney for [Plaintiff] Bank, agreed to the request of Defendants' then attorney to foreclose on the parcels sequentially. The parcels were Lot 13 and Lot 12 of McClaren Subdivision, plus a parcel owned by the mother of Dave Allen Webb. Lots 13 and 12 were adjacent, but had been acquired by different deeds at different times. It was agreed that the house tract would be sold first under the foreclosure, in the hope that it would not be necessary to foreclose the vacant lot or the mother's parcel.

To distinguish between the vacant lot and the lot upon which the house was located, Mr. Pirtle examined the tax map and data in the property tax appraiser's office. This clearly showed that the house was on Lot 12. In fact, however, the house was entirely on Lot 13.

Mr. Pirtle, as Trustee, advertised and sold at auction Lot 12 under the erroneous assumption that it was the house tract. Plaintiff bank bid and bought the property for $80,000.00, and credited that amount against the promissory note, erroneously believing it had bought the house.

On the date of foreclosure, December 8, 1993, the indebtedness was $156,475.42 before credit for the foreclosure.

Plaintiff bank sold the "house" (actually vacant Lot 12) to Mr. and Mrs. Riks for $97,500.00. Mr. and Mrs. Riks improved the house, and it has increased in value since the foreclosure. After lear[n]ing of the title problem, Plaintiff bank repurchased Lot 12 from Mr. and Mrs. Riks for $125,000.00.

Meanwhile, Lot 13, with the house on it, has remained unforeclosed because Defendants filed a Chapter 13 bankruptcy in order to stay the foreclosure. However, the bankruptcy court has deferred to the judgment of this court on the issues involved in this action.

THE COURT: I'm convinced that the Complaint as originally drafted, the relief that was sought would have been inappropriate. I really think it would have been because it's asking the Court to substitute a foreclosure on a lot that was not

actually sold, foreclosure at an arm's length transaction, and that's just fraught with all kinds of difficulties, but would have worked in my opinion to the potential detriment of the Webbs through no fault of their own, that they would not have been afforded the opportunity of having someone there, the highest, best bidder. Mr. Webb admitted he owes this money. Mr. Webb says he wants to pay it back. He even filed a Chapter 13. I don't think the relief as originally as requested is appropriate, however, I think Mr. Camp hit it right square on the head to put these parties back where they were before this initial foreclosure. It seems to me that is, as he said, equity regards done, what ought to be done, and that's clearly what ought to be done in this situation as far as I'm concerned as a Judge. I think we need to go right back to it, put them back in the same position they were before. . . . [T]he defendant's own expert has said this property has actually appreciated in value by some $20,000.00 or $30,000.00, which potentially could inure to the Webbs--I don't know that it will. I have no idea what [effect] this decision is going to have on what the Bankruptcy Court does or doesn't do, but I think the foreclosure is appropriate on both of the lots. I think the clerk and Master ought to be supervisor of the sale, although [he may] authorize[] or employ an auctioneer of his choosing to conduct the auction if the Clerk and Master feels it appropriate. I feel like the proceeds ought to be applied first to the indebtedness over at City Bank and Trust Company, and then any overage should go to the Webbs. I think it's only fair that the debt that the Webbs owe City Bank and Trust Company be set at the amount that was owed at the time of the very first foreclosure back in whenever that was. The clock of debt should not run against them from the point forward. It's not their fault. It was nothing they did or didn't do, but whatever that dollar figure is, that is what the indebtedness that . . . I find the Webbs owe City Bank and Trust Company. I'm talking way back in December of whenever that was. I don't know what the date was right off the top of my head. Whenever the foreclosure was initiated as of that day, whenever the first foreclosure notice was forwarded to the Webbs. That's what they owe in my opinion. I think December 8th is the appropriate date.

The defendants present one issue: "Whether the trial court err[ed] in setting aside the foreclosure sale at the request of the trustee and the mortgagee under the deed of trust and ordering a new foreclosure sale?"

The defendants assert that the plaintiff Bank, as a purchaser at a foreclosure sale, should not be allowed to escape the consequences of its own negligence. In so

doing, the defendants point out that there is no evidence that they contributed to the mistake by providing erroneous information to the state tax appraiser. However, we do not believe that it makes any difference whether they did or did not provide erroneous information. This is not determinative of the issues in this instance.

In *Alston v. Porter*, 219 S.W.2d 745 (Tenn. App. 1949), a suit was brought for cancellation or reformation of a deed which was prepared in error without any fault of the grantor or grantee. This court has held that the evidence clearly established that the description in the deed was such as to include two tracts of land, whereas the understanding of the parties was for the purchase of one tract and that the erroneous description was due to an inadvertent mistake of the grantors' attorney. In upholding the trial court's decree to correct the inaccurate deed, the court cited *Hicks v. Gooch*, 3 Tenn. (Shannon) 447, 451 (Tenn. 1875):

> "It is stated to be the well-defined and well-established rule upon this subject, that when the mistake is of so fundamental a character that the minds of the parties have never, in fact, met; or where an unconscionable advantage has been gained by mistake or misapprehension, and there was no gross negligence on the part of plaintiff, either in falling into the error, or in not sooner claiming redress, and no intervening rights have accrued, and the parties may still be placed in statu quo, equity will interpose in its discretion to prevent intolerable injustice."

*Alston*, 219 S.W.2d at 746; *see also Rentenbach Eng'g Co., Constr. Div. v. General Realty Ltd.,* 707 S.W.2d 524, 527 (Tenn. App. 1985).

Quoting from 19 Am. Jur. Relief--Mistakes of Fact § 53, the *Alston* Court further stated that, "[a] court of chancery has jurisdiction to relieve parties from the consequences of a mistake of fact . . . . [T]o permit the just rights of a party to be lost [because of a mistake], when relief would not be prejudicial to the rights of others, would be manifestly unrighteous and inequitable." *Id.* at 31; *see Martin v. Martin*, 755 S.W.2d 793, 797 (Tenn. App. 1988) (maintaining chancery court's inherent jurisdiction to correct mistakes). In order to be subject to correction, a mistake which is not induced by fraud must have been mutual. *Kozy v. Werle*, 902 S.W.2d 404, 411 (Tenn. App. 1995). Reformation will be decreed only where the evidence is clear and

conclusive as to the parties intentions. *Pierce v. Flynn*, 656 S.W.2d 42, 46 (Tenn. App. 1983).

While the trial court's decision does not provide the defendants with the windfall that they desire, the record does not reflect that the defendants will be prejudiced by the setting aside of the foreclosure sale. Indeed, the undisputed evidence at trial from the testimony of defendants' own realtor was that the fair market value of the realty had significantly increased since the time of the original sale. Furthermore, it would be manifestly unjust and inequitable to permit the defendants to gain a windfall when the circumstances giving rise to the error arose out of a plan for the sequential sale of different properties - - a method which was devised for the sole purpose of preserving for them any real estate that might not be necessary to pay the outstanding indebtedness to the bank.

The trial court rendered equity in rescinding the foreclosure proceedings and in restoring the parties to their respective positions prior to the original sale. To the extent that the defendants' liability on the indebtedness owed to the bank had already been discharged in bankruptcy, defendants stand only to gain by another sale of both lots. We are therefore of opinion that the judgment of the trial court should in all things be affirmed, and the cause remanded to the trial court for further necessary proceedings. Costs on appeal are taxed to the defendants/appellants.

_____
SAMUEL L. LEWIS, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE,
MIDDLE SECTION

_____
BEN H. CANTRELL, JUDGE