**IN THE COURT OF APPEALS OF TENNESSEE**

**AT KNOXVILLE**

FILED

August 25, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | |
|---|---|
| SAUL T. MALLEN, TRUSTEE OF | ) C/A NO. 03A01-9811-CH-00364 |
| SPORT-WEAR MILL, INC. | ) |
| LIQUIDATING TRUST, | ) McMINN CHANCERY |
| | ) |
| Plaintiff-Appellee, | ) HON. FRANK V. WILLIAMS, III, |
| | ) CHANCELLOR |
| v. | ) |
| | ) |
| PI, INC., | ) AFFIRMED |
| | ) AND |
| Defendant-Appellant. | ) REMANDED |

GEARHISER, PETERS, LOCKABY & TALLANT, PLLC., Chattanooga, for Plaintiff-Appellee.

HIGGINS, BIDDLE, CHESTER & TREW, LLP., Athens, for Defendant-Appellant.

**O P I N I O N**

Franks, J.

In this action, the Trial Court awarded Sports-Wear Mills $95,000.00 in damages, and dismissed defendant, PI, Inc.,'s counter-claim. PI, Inc., has appealed and has raised these issues:

> (1) Whether the Trial Court erred in holding that the Defendant was not entitled to specific performance of the Option Agreement; and

> (2) Whether the Trial Court erred in awarding damages for the defendant's alterations to the lessor's building?

Plaintiff Saul Mallen is a Trustee of the Sport-Wear Mill Inc. Liquidating Trust. The Trust owns the building in Etowah which is the subject matter

of this litigation.

Defendant leased the building for three years, at $40,000.00 a year, and the parties also entered an Option Agreement, which granted defendant the option to purchase the building at the end of the lease for $30,000.00. Defendant's attorney prepared both agreements.

Defendant's lease ended February 28, 1995, and the Option Agreement required that defendant exercise its purchase option between February 28 and April 1, 1995. On June 12, 1995, defendant tendered a warranty deed, which Mallen refused. Defendant remained in the building as a hold-over tenant until February 28, 1996. After defendant vacated the building, Mallen filed suit on March 8, 1996, seeking to recover damage to the building allegedly caused by defendant, and defendant counter-claimed for specific performance of the Option Agreement.

"[R]eview of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." T.R.A.P. 13(d). The same presumption does not apply to conclusions of law. *Tennessee Farmers Mut. Ins. Co. v. Moore*, 958 S.W.2d 759 (Tenn.App. 1997), *appeal denied*, October 6, 1997.

The Trial Judge properly determined that defendant was not entitled to specific performance because it did not comply with the terms of the Option Agreement. The Option Agreement, prepared by the defendant's attorney, sets forth the manner in which the option must be exercised:

> Exercise of Option. This option may be exercised only within the period between February 28, 1995 and April 1, 1995 and not earlier or later. To exercise this option, Optionee shall provide Optionor written notice of their intent and desire to exercise said option, which notice shall be given such that it is received by Optionor after March 1, 1995 or before 12:00 noon the 1st day of April, 1995. Notice may be given by certified mail, return receipt requested, or by hand-delivery to the Optionor's address as herein

2

> specified and in the event of Optionor's failure to accept any certified or registered mail, then its date of postmark shall be deemed the date of receipt and the mailing thereof shall constitute notice of exercise of the option.

The Option Agreement also provides that "[i]f the Optionee does not exercise this option before its expiration, then the amount paid by the Optionee herewith shall be retained by the Optionor free of all claims of the Optionee.

The Trial Judge noted that the provisions at issue are specific, clear and unambiguous. When the language of a contract is plain and unambiguous, it is the court's duty to interpret it and enforce it as written. *Koella v. McHargue*, 976 S.W.2d 658 (Tenn.App. 1998). *Also see* T.C.A. § 47-50-112. In this case, defendant did not give notice within the time specified by the contract, and time is of the essence in option contracts. *Allen v. National Advertising Co.*, 798 S.W.2d 766 (Tenn.App. 1990). Thus, the defendant failed to comply with the terms of the Option Agreement. *See Grisham v. Lowery*, 621 S.W.2d 745, 749 (Tenn.App. 1981) ("[A]n option to purchase contained in a lease which is exercisable during the term of the lease is not extended by a holdover tenancy and, therefore, cannot be exercised by a lessee holding over after the expiration of a lease.")

Defendant argues that it is entitled to specific performance, citing *Gordon v. Snyder*, 1987 WL 9257 (Tenn.App.) In *Gordon*, this Court found that an option had been validly exercised when the assignee orally accepted within the specified time and tendered the amount due only sixteen days later. The Court noted that the defendants had acquiesced in the delay by accepting late payments without exercising their right to terminate the lease and option.

In the instant case, there is no evidence that defendant gave oral notice of acceptance or otherwise, during the specified time. The record shows that it was the plaintiff who contacted defendant regarding the expiration of the option. More than three months passed before the defendant attempted to exercise the option. Thus,

*Gordon* is distinguishable.

The defendant argues the Trial Court erred in awarding damages. The Lease Agreement requires that "[a]t the expiration of the Lease term, the Tenant shall surrender the Leased Property in as good a condition as it was at the beginning of the term, reasonable use and wear and damage by the elements excepted." The Agreement also addresses repairs and alterations:

> Tenant shall be responsible for any and all necessary repairs,
> including the maintenance of all plumbing, electrical, natural gas
> and sewer systems and also, for any repairs required to be made
> to the exterior or interior of the premises of every kind and
> character during the term or any extended term of this Lease.
> Any alterations or improvements made by the Tenant shall
> remain the property of the Landlord and the Tenant shall not be
> obligated to remove the same upon termination of the Lease.

Defendant concedes that it altered the building. For example, the defendant dug pits in the floor, removed toilets and offices and removed an alarm system. The defendant contends, however, that the building appreciated in value during the lease and that this appreciation exceeds the cost of repairs. The Trial Court found that there was no competent proof regarding the fair market value of the building. Mallen testified on cross-examination that someone had offered him $300,000.00 for the building, but he stated, however, that he knew the individual making the offer did not have the funds to purchase the building or otherwise follow through on the offer. Accordingly, we find that the Trial Court properly concluded that an award of damages against the defendant was proper.

The defendant also argues the Trial Court's award of damages was excessive. There is considerable evidence regarding damages and repairs. Both parties offered testimony concerning the pre-lease condition of the building, damages and alterations. The Trial Judge considered all of the evidence submitted and made detailed findings concerning damages. Upon review, we conclude that the evidence does not preponderate against the award of damages made by the Trial Judge to

4

plaintiff.  T.R.A.P. Rule 13(d).

We affirm the judgment of the Trial Court and remand with the cost of the appeal assessed to the appellant.

_____
Herschel P. Franks, J.

CONCUR:


_____
Houston M. Goddard, P.J.



_____
Charles D. Susano, Jr., J.